THOMAS F. FERNS, Conservator, *et al.*

*v.*

THEODORE S. CHAPMAN, Exr. *et al.*

*Opinion filed October 24, 1904.*

1. PARENT AND CHILD—*burden is on parent to show that conveyance was fair.* In case of a conveyance from a child recently of age to a parent, the burden is upon the latter, or those claiming under him, to show that the transaction was free from fraud or influence growing out of the fiduciary relation of the parties.

2. SAME—*when conveyance should be sustained.* A conveyance from a child recently of age to a parent should be upheld, where it is clear that it was voluntarily made, free from fraud, and was for the best interest of the child in saving the estate, which he was rapidly wasting through his spendthrift habits.

3. EVIDENCE—*what evidence rebuts presumption that deed was not voluntarily made.* The presumption that a deed from a child recently of age to a parent was not voluntarily or understandingly made, is rebutted by proof that the grantor subsequently testified, in two proceedings in court, that he conveyed the property to his father and received the consideration, not questioning the validity of the deed.

4. ESTOPPEL—*when child is estopped to question the validity of deed.* A son who contests the will of his father, claiming title as heir-at-law to land which he had conveyed to his father by deed, is estopped, when defeated in that proceeding, to subsequently attack the validity of the deed.

5. LACHES—*one seeking to avoid deed must act promptly.* One seeking to avoid a deed upon the ground of fraud or undue influence in its execution must act promptly after full knowledge of the facts, particularly after the death of the grantee, or he will be deemed to have affirmed the deed.

APPEAL from the Circuit Court of Christian county; the Hon. S. L. DWIGHT, Judge, presiding.

PATTON & PATTON, and O. B. HAMILTON, for appellants.

ED. J. VAUGHN, JAMES M. TAYLOR, and THEODORE CHAPMAN, Jr., for appellee Chapman.

H. J. HAMLIN, Attorney General, for the People.

Mr. JUSTICE HAND delivered the opinion of the court:

This was a bill in chancery filed in the circuit court of Christian county on the fifth day of November, 1902, by Thomas F. Ferns, conservator of the person and 'estate of Alexander M. Cheney, against Theodore S. Chapman, executor and trustee under the last will of Prentiss D. Cheney, deceased, and others, to cancel and set aside as a cloud upon the title of said Alexander M. Cheney a certain deed bearing date May 3, 1892, executed by said Alexander M. Cheney to said Prentiss D. Cheney, whereby the said Alexander M. Cheney granted, bargained and sold to said Prentiss D. Cheney all his right, title and interest in and to 5481 acres of land located in Christian county, Illinois, for the expressed consideration of $25,000, which deed was filed for record and recorded, on the ground that said deed was without consideration, and that the execution thereof was obtained by fraud and undue influence practiced upon and exercised over the said Alexander M. Cheney by said Prentiss D. Cheney. Answers and replications were filed, and the case was tried before the chancellor upon oral evidence, the depositions of witnesses and documentary evidence, and a decree was entered dismissing the bill for want of equity, and the said conservator and Alexander M. Cheney (the said Alexander M. Cheney, upon the motion of the conservator, having been made a party complainant to the bill,) have prosecuted an appeal to this court to reverse said decree.

Dr. Edward A. D'Arcy died testate at Jerseyville, Jersey county, Illinois, on April 25, 1863, seized in fee simple of the said 5481 acres of land. By his last will he gave to his daughters, Mrs. Ann Caroline Teese, wife of Frederick H. Teese, and Catherine M. Cheney, wife of Prentiss D. Cheney, the use of said land for life, and devised the fee thereof to his grandchildren, share and share alike. Mrs. Teese was then the mother of two children, Mary M. Teese and Catherine M. Teese, but Mrs. Cheney was childless. Thereafter she gave birth to three children : Edward D. Cheney, born June 28, 1865, who died August 21, 1868; Alexander M. Che-

ney, the complainant, born September 18, 1868; and Caroline T. Cheney, born October 11, 1875. On November 23, 1863, a partition agreement dividing between them said land was entered into between Mrs. Teese and Mrs. Cheney and their husbands, whereby said Mrs. Teese and Mrs. Cheney were each to hold the land allotted to them in severalty during their lives, and the husband of each, if he survived his wife, was to hold the portion allotted to his wife and receive the rents and profits arising therefrom for a period of five years after the death of his wife, to re-imburse him for the moneys expended in improving the land allotted to his wife. April 23, 1877, Catherine M. Cheney died testate. She devised the interest in said land which she had inherited from her deceased son, Edward D. Cheney, to her husband, Prentiss D. Cheney, and her children, Alexander M. Cheney and Caroline T. Cheney, share and share alike. The said Caroline T. Cheney survived her mother, Catherine M. Cheney, but a few days, her death occurring May 26, 1877. Thereupon Prentiss D. Cheney, on behalf of himself and his son, Alexander M. Cheney, filed a bill against Mrs. Teese and the other parties in interest for a construction of the will of Edward A. D'Arcy. The case reached this court and is reported as *Cheney* v. *Teese,* 108 Ill. 473, where it was held that each of the grandchildren of said Edward A. D'Arcy, viz., Mary M. Teese, Catherine M. Teese, Edward D. Cheney, Alexander M. Cheney and Caroline T. Cheney, took under the will of their grandfather a one-fifth part of said land in fee, subject to the life estates of their mothers therein,— that is, the Teese children took a two-fifths interest therein and the Cheney children a three-fifths interest therein,— and that two of the Cheney children and Mrs. Cheney being dead, three-fifths of said lands belonged in fee to said Prentiss D. and Alexander M. Cheney.

Alexander M. Cheney, after the death of his mother, for a number of years resided with his mother's people in the State of New Jersey. Upon the re-marriage of his father he returned to Jerseyville, in this State, and made his home at

his father's house.   He graduated from the high school in Jerseyville in 1887, attended school at Alton and other places during his minority, studied medicine with Dr. A. A. Shobe at Jerseyville, attended medical college in New York City and Nashville, Tenn., and practiced medicine for a time at Denver, Col., and appears at the date of the execution of said deed to have been a man of ordinary intelligence and more than average education.  At some time prior to 1892 he had, however, acquired the habit of using intoxicating liquors and narcotic drugs to excess, and latterly became a spendthrift and profligate. It appears from a letter introduced in evidence by the appellants, written him by his father, bearing date February 1, 1893, that he had squandered during the preceding two and one-half years more than $7000;  also that he had contracted syphilis and was addicted to the vice of gambling.

Prentiss D. Cheney was a banker and the owner of a large amount of real estate and personal property.   He appears from the testimony of all the witnesses, those for the appellants as well as those for the appellees, to have been a man of temperate habits, successful in business, careful, painstaking and methodical, and while exacting and pugnacious and one who loved to have his own way and who brooked opposition with little patience, upon the whole an honest and just man.  From the time of the death of Dr. D'Arcy to the time of the execution of the deed in question Prentiss D. Cheney had largely managed and controlled the D'Arcy estate, the other parties in interest being non-residents of the State and Alexander M. Cheney a minor and away from home.   After the deed was executed, and while Prentiss D. Cheney was in possession of the land, Alexander M. Cheney testified on two separate occasions in cases then pending in court, that the deed to his father of his interest in said lands was a valid deed and that his father had paid him in full the consideration named therein.   One of these cases was a suit brought in 1895, in which Prentiss D. Cheney was served as garnishee by one Kirby in the county

court of Jersey county, with a view to collect a judgment held by Kirby, as assignee, against Alexander M. Cheney, from assets in the hands of Prentiss D. Cheney alleged to belong to said Alexander M. Cheney. On the trial of the garnishment suit Alexander M. Cheney was called as a witness and testified: "I made a deed May 3, 1892, to Prentiss D. Cheney to a large tract of land in Christian county, Illinois, for the alleged consideration of $25,000.

Q. "Did your father agree, as a further consideration for that conveyance, to perform any promise or render to you any other or further value than the consideration of $25,000?

A. "Not to my knowledge.

Q. "If he had done so you would know it, would you not?

A. "I think so.

Q. "When was that deed made—at the time of its date?

A. "Yes, sir.

Q. "When was the consideration paid?

A. "Part at the time and the rest shortly afterwards."

The other was a suit brought by the grantees of the Teese interest in said lands against Prentiss D. Cheney for a partition thereof, which was finally disposed of in this court under the title of *Cheney* v. *Ricks,* 168 Ill. 533, and *Cheney* v. *Ricks,* 187 id. 171. In the bill filed in that case it was alleged that Prentiss D. Cheney was the owner of the undivided three-fifths of said land, setting up the conveyance to him of May 3, 1892, by said Alexander M. Cheney in part as the basis of his title. On the hearing before the master Alexander M. Cheney was called as a witness, and on July 20, 1896, testified: "I made a deed to my interest in these lands to my father in the spring of 1892. * * * The express consideration of this deed is $25,000. That is what was paid for the land." At the time he gave said testimony he must have been fully advised of the issues in the case and that his father was claiming title to said land in part under said deed. A letter bearing date January 22, 1896, written to a friend by Alexander M. Cheney, was introduced in evidence,

in which, after referring to a claim which he owed the friend and his inability to pay it, speaking of his father, he said: "I am in his good graces again. He wants me to go and take care of the farm that I once owned. There are three and one-half sections to be looked after." In the letter of February 1, 1893, hereinbefore referred to, Prentiss D. Cheney said to Alexander M. Cheney, after referring to a report which had come to Prentiss D. Cheney that Alexander M. Cheney had represented to a young lady with whom he contemplated marriage that he was a large property owner, and especially that he was the owner of the D'Arcy homestead: "The actual ownership of this homestead, the Gocke farm, the Flaherty farm and all the other property here, is in me and you have no legal rights in it." A number of witnesses testified on the trial that Prentiss D. Cheney had said to them, subsequent to the date of the deed, May 3, 1892, that he took title to the property to prevent his son from squandering it, or upon his death the property would all belong to his son, or the deed to him was not valid, or that he paid his son nothing for the land, etc.

January 11, 1896, Prentiss D. Cheney executed his last will, which was admitted to probate in August, 1900. That will was before this court in the case of *Chapman* v. *Cheney*, 191 Ill. 574, wherein, in speaking of its terms, as applied to Alexander M. Cheney and the objects sought to be accomplished by the testator, on page 580 it was said: "The third paragraph gives and bequeaths to the son, the appellee, $100, and all portraits, pictures, books, furniture, clothing, etc., and heirlooms of his mother and grandparents at the testator's home; also the testator's guns, emblems, etc. Paragraph 4 gives and devises all the residue and remainder of the testator's property, of every kind, to his trustee, the executor named in a subsequent paragraph, (being appellant,) to hold in trust for certain enumerated purposes, viz.: to lease and collect the rent of real estate and to manage and preserve it; to loan funds that may accumulate, after payment of debts and legacies, and out of the proceeds arising from real and

personal property, after paying taxes and expenses of maintenance, the trustee is authorized, in his discretion, having in view the fulfillment of the testator's desires as made known by the will, to give to said son, if the trustee shall deem it advisable, $100 each month, upon the condition that said son apply in person for the same; and it is provided that this allowance shall not be assignable or in any manner transferable, nor be paid upon any order to any other person or in any other manner except to said son on his personal application, it being testator's intention that said payments should be for partial support of his said son. In case the son shall marry, said allowance may be increased to $200 per month, one-half of which, in the discretion of the trustee, to be paid to the wife, should she apply for it. In the event of sickness or accident such payments may be increased to an amount to meet the exigencies, without extravagance; and in the event of emergencies arising from intemperate conduct, evil associates or the violation of any law, no help whatever is to be furnished by said trustee and executor. The fifth paragraph provides that should the testator's said son abstain from the use of intoxicating liquor or narcotic drugs, of whatever name or form, whether liquid or otherwise, and conduct himself as a worthy citizen, and be free of debts or judgments contracted within the year, (except for sickness,) for one year after the testator's death, the trustee is authorized, if deemed by him prudent and advisable, to pay said son $1000; or if the conduct of said son has not been such as to convince the trustee that it will then be prudent and advisable to grant such payment, it shall be postponed until such time as and when such trustee shall be so convinced by his own knowledge and personal observation, and that such specified conduct and conditions have continuously existed for one full year. After two years of such continuous good conduct $1500 may be paid as above provided, and after three years $2000, and after four years $2500, and after five years $3000,—such installments not to be assignable, and the son to have no vested interest therein until payment shall have

been made to him personally. The paragraph then provides
that in the event the testator's son shall fulfill the conditions
above set forth for five successive years, he is to have posses-
sion and full management of one-half of the testator's lands
in Christian county, to be designated and set apart by the
trustee, and thereafter to have all the rents and profits of such
half after paying taxes and expenses, and the monthly pay-
ments above provided for shall be no longer payable. It is
then provided that if said son shall continue the course of
conduct and conditions above specified, and shall after two
years and within five years thereafter save and accumulate
from the use of said lands, or by his own exertions in law-
ful business or by his savings from the aforesaid payments,
$7000 in money or in real estate in his own name, unencum-
bered, and be free from debts, the trustee shall then give to
said son the possession and management of the remaining
half of the testator's lands in Christian county. Said para-
graph also gives the trustee power to sell and convey any and
all of the testator's real estate except the lands in Christian
county, and except also (unless the widow consents) the
home place in Jerseyville during her life,—such power to be
exercised in his discretion, within certain limits prescribed
by the will. Paragraph 6 provides that if the testator's said
son shall fail to fulfill the conditions prescribed in para-
graph 5 of the will, by which the trustee is authorized to pay
him $1000 at the end of one year after the testator's death,
then the trustee is directed to expend not less than $500 nor
more than $1000 per annum, in any lawful manner, to assist
in detecting and prosecuting the violation of the statutes of
Illinois, or the ordinances of the city of Jerseyville, regulat-
ing the sale of intoxicating liquors or prohibiting gambling,
wherever such laws have been violated within said city. It
seems clear from these provisions of the will, and from
others, that it was the intention and purpose of the testator
to accomplish, as far as it lay in his power by the testamentary
disposition of his property, two things: the first and princi-
pal one being to reclaim his son from the use of intoxicating

liquors, narcotic drugs and evil associations, and to induce him to form and maintain habits of sobriety, economy and industry; and the other was to preserve his large estate, and prevent its dissipation and loss by the waste and extravagance of his son, which the will shows he feared and sought to guard against, and, apparently with wise forethought, sought to make the latter purpose aid in the accomplishment of the former and principal one. As one of the means adopted to accomplish his objects he created a spendthrift trust."

The case of *Chapman* v. *Cheney, supra,* was a bill filed on August 17, 1900, by Alexander M. Cheney against the executor and trustee under the will of Prentiss D. Cheney, deceased, and others, alleging that he was the sole heir-at-law of Prentiss D. Cheney, deceased; that said Prentiss D. Cheney died seized of the land covered by the deed herein sought to be canceled and set aside and other land in Illinois, and asked the court to hold that said will, in so far as it disposed of said land, was void, as being in contravention of the law against the creation of perpetuities, and to hold that he took the title to said land by inheritance from said Prentiss D. Cheney, deceased. The bill also set up the making of said deed of May 3, 1892, to his father, and averred, as here, that it was without consideration, and that he was induced to execute the same in consequence of the fraud and undue influence of his father, Prentiss D. Cheney, practiced and exerted over him, and prayed that said deed be canceled and set aside. A demurrer was sustained to the bill on the ground of multifariousness, whereupon he amended the bill by striking out therefrom all averments with reference to said deed, and relied solely upon the ground that the will was void, so far as it affected the land in question, upon the ground that it created a perpetuity. An answer was filed to the amended bill, and the chancellor held the will created a perpetuity in said land and was void and entered a decree annulling said will in part, the effect of which was to decree the title to said land to be in said Alexander M. Cheney as

heir-at-law of said Prentiss D. Cheney, deceased. An appeal was perfected to this court, where the decree was reversed and the cause remanded, whereupon a final decree was entered dismissing the bill for want of equity. The said Alexander M. Cheney was then adjudged by the county court of Jersey county an unfit person to have charge of and to manage his estate, and the appellant Ferns was appointed conservator of the person and the estate of said Alexander M. Cheney, whereupon this bill was filed.

It is first contended that the chancellor erred in not holding that Prentiss D. Cheney held the title to said land in trust for the benefit of Alexander M. Cheney and in declining to enforce said trust against the executor and trustee of the will of Prentiss D. Cheney, deceased. There is no evidence in the record which tends to show, even remotely, that Prentiss D. Cheney practiced any fraud or deception upon Alexander M. Cheney at the time said deed was made, by reason of which Alexander M. Cheney was induced to convey to him his interest in said land, and the admissions claimed to have been made by Prentiss D. Cheney subsequent to the date of the deed, that he held the title to said land for the benefit of Alexander M. Cheney, are unsatisfactory and are not sufficient to establish an express trust and do not tend to support the allegations of the bill, which seeks to establish a resulting or constructive trust, and if the contention of the appellants can be sustained upon any theory, it must be based upon the ground that a trust by implication of law arose out of the relation which the grantee and grantor bore to each other—that of child and parent—at the time the conveyance was made.

The court has been furnished by counsel with exhaustive briefs upon the subject as to where the burden of proof rests in this case, it being contended by appellants that when a conveyance is made by a child to a parent shortly after the child becomes of age, the burden is upon the parent to show the transaction was fully understood by the child, that it intended to and did voluntarily transfer the property to the

parent, and that it was to the interest of the child that the transfer should be made; while on behalf of appellees it is contended that the rule contended for by appellants, which it is conceded usually applies between persons occupying a fiduciary relation toward each other, does not apply to a transfer from a child to a parent, as it is said the court will presume the parent, by reason of his affection for his child, would not overreach him,—in other words, that the presumption arising from the fiduciary relation is rebutted by the presumption that a parent, by reason of his affection for his child, would do him no wrong, and that when a child conveys his property to a parent, the court will sustain the conveyance unless there is proof of fraud or undue influence.

Many well considered cases may be found which sustain the contention of appellees. (*Jenkins* v. *Pye,* 12 Pet. 241; *Towson* v. *Moore,* 173 U. S. 17.) The rule, however, as contended for by the appellants, is firmly established in this State. In *White* v. *Ross,* 160 Ill. 56, the authorities bearing upon the rule under consideration were reviewed by the court, and the conclusion was reached that in case of a conveyance from a child recently of age, to a parent, the burden of proof is upon the parent to show that the transaction was free from fraud and the influence of the parent growing out of the fiduciary relation existing between the child and the parent,—that is, in the language of the adjudicated cases, that the transaction was a "a righteous one." To the same effect is *Sayles* v. *Christie,* 187 Ill. 420. It is, however, clear from all the authorities that a child, after attaining his majority, is not prohibited by law from transferring his property to his parent, if the transaction is fully understood by the child, voluntarily made and is not tainted with fraud or brought about by parental influence and is for the best interest of the child, and it is equally clear that the presumption growing out of the fiduciary relation existing between child and parent is stronger and more difficult to rebut in some cases than in others. It is not the relation of parent and child which avoids the transfer, but the presumption of

undue influence growing out of that relation when unre-butted, and while the court should view a transfer from a child to a parent with a critical eye, still if the court can see, from the evidence, the conveyance was voluntarily made and was fully understood by the child and was for the best inter-est of the child, it will be sustained. In this case the son, after his mother's death, had been much of the time from beneath the parental roof and was under the influence and control of persons other than the father. At the time the deed was executed he was twenty-three years of age. The conveyance was drawn with his own hand. Twice,—once in 1895 and again in 1896,—he testified he had conveyed the property to his father, and he made no question but what the deed was valid until after his father's death, which did not occur until eight years after the deed was made and delivered. These facts rebutted the presumption that the deed was not voluntarily and understandingly made by the grantor. If voluntarily and understandingly made, was it to the interest of Alexander M. Cheney to execute the same? He had acquired habits which made him the easy victim of the vile and unscrupulous, who, while he was under the in-fluence of drink or narcotic drugs, were likely to take ad-vantage of his then condition and impoverish him. When in his normal condition, this, naturally, he would fully realize. The father was a prudent man and his best friend, and he was his father's only child. By transferring the estate to the father the patrimony given him by his grandfather was safe, at least so long as the father lived, and he might well trust his father, in case of his death, to so dispose of the property by will as to secure to him its use and preserve the same for the benefit of his children after his death; and the will left by his father shows the confidence reposed in the father by the son was not misplaced, as not one acre of the land left by Dr. D'Arcy in Christian county was disposed of by the father but remained in his name at the time of his death, the income of which Alexander M. Cheney may enjoy, under the terms of his father's will, if he will abandon his

vicious habits and associations, and the fee will go to his children after his death, if he leave children him surviving.

Although Alexander M. Cheney testified he had been paid the consideration named in the deed, we have treated the conveyance as a voluntary one. We think the evidence showed, and the chancellor properly held, that the conveyance was not an unrighteous one, and that he did not err in refusing to set the deed aside on the ground that the presumption was not rebutted that it was procured from the son by the father through parental influence.

In support of the decree it is contended that Alexander M. Cheney is estopped by the proceedings had in the case of *Chapman* v. *Cheney, supra,* from attacking the validity of the deed of May 3, 1892. In that case, as finally tried upon the amended bill, Alexander M. Cheney claimed title to the premises as heir-at-law of his father, Prentiss D. Cheney, deceased. In the case at bar he claims title thereto as owner under the devise to him contained in the will of his grandfather, Edward A. D'Arcy, deceased, and by inheritance from his mother and deceased brother and sister. In the first suit he necessarily admitted the validity of the deed, while in this suit he asserts its invalidity. "Whenever the law supplies to a party two or more methods of redress in a given case, based upon inconsistent theories, however those methods may differ, either in the form or the forum of procedure or in the personality of the parties to the several proceedings, the party is put to his election, and his choice of either is a bar to his resort to the other." (7 Ency. of Pl. & Pr. p. 361.) This doctrine has often been applied by this court. A familiar example of its application is, that a vendee cannot sue for the return of the purchase money and afterwards file a bill for a specific performance of the contract of sale. In the case of *Cheney* v. *Ricks,* 168 Ill. 533, Cheney filed a cross-bill, in which he alleged he was the owner, by purchase, from Dr. Edward A. D'Arcy of 1920 acres of the premises sought to be partitioned, and it was held that by reason of the position assumed by him in the case of *Cheney*

211 – 39

v. *Teese,* 108 Ill. 473, he having in that case claimed title to the premises through the will of his wife and by descent from his deceased children, each of whom derived title through the will of Edward A. D'Arcy, deceased, he was estopped in the latter case from asserting any rights under said contract. In *Knox* v. *Yow,* 91 Ga. 367, a wife claimed and established a homestead for herself and minor children in certain premises as the property of her husband, against a creditor of the husband, and it was held that claim was inconsistent with the assertion of title in herself under a prior conveyance from her husband, and that a purchaser at sheriff's sale under a judgment in favor of the creditor took title subject to the homestead but acquired it freed from the title of the wife acquired from the husband.

The evidence shows that the executor and trustee expended $5000 in the defense of the will of Prentiss D. Cheney, deceased, in the case of *Chapman* v. *Cheney, supra.* We think it apparent that Alexander M. Cheney was placed in a position, upon his father's death, where, if he desired to contest with the executor and trustee the right of the executor and trustee to hold said land under and by virtue of his father's will, he was bound to affirm or deny the validity of said deed; that having filed a bill which he could not have filed except upon the theory that the deed was valid,—that is, that the land was the land of his father and as his heir he took title thereto,—and that the will was void and should be removed out of his way to the end that he might be let into the possession and enjoyment of said land as heir, he could not, after he was defeated in that proceeding, abandon that claim and in this suit assert the opposite and attack the validity of said deed. Having elected to take said land as heir of his father in the case of *Chapman* v. *Cheney,* he is estopped in this suit to claim it as owner.

It is further contended by the appellees that Alexander M. Cheney, by reason of his *laches,* is barred from contesting the validity of said deed. In case the grantor in a deed claims its execution was obtained by fraud or undue influence

after he has knowledge of all the facts, he must act promptly or he will be deemed to have affirmed the deed. Especially is this true after the death of the grantee. This bill was not filed for more than ten years after the date of the deed and two years after the death of Prentiss D. Cheney. The evidence shows Alexander M. Cheney was fully advised by his father on February 1, 1893, in the letter written to him bearing that date, that he had no interest in said land and that Prentiss D. Cheney claimed to be the owner thereof, and the letter written by Alexander M. Cheney to his friend on January 22, 1896, is conclusive that he then knew that the title to the land had passed out of him and was vested in his father. No satisfactory explanation of the long delay of Alexander M. Cheney in attacking said deed and asserting his right to said land is found in this record. In *Jenkins* v. *Pye, supra,* which was a bill in equity to set aside a deed from a daughter to her father, it was said: "Lapse of time and the death of the parties to the deed have always been considered in a court of chancery entitled to great weight and almost controlling circumstances in cases of this kind." In *Maher* v. *Farwell,* 97 Ill. 56, on page 61, the court said: "The law does not permit one, after having received a supposed injury, to lie by for years until the circumstances connected with it have probably faded from the memory of the witnesses to the transaction or until they have died or removed from the country, before instituting legal proceedings to redress it. It is a favorite maxim of equity that the law favors the vigilant, and not those who sleep upon their rights." We are impressed with the view that to hold this suit, under the circumstances disclosed by the evidence, could be maintained, would be to disregard the principles announced in the foregoing and many other reported cases.

The Attorney General intervened in this case on behalf of the People, claiming a contingent interest in said land in the event Alexander M. Cheney should die childless, and filed a plea of estoppel based upon the adjudication in the case of *Chapman* v. *Cheney, supra,* which defense was also inter-

posed in the answer of the executor and trustee. The plea was held insufficient and the Attorney General has assigned cross-errors. The disposition made of the case makes it unnecessary to consider said cross-errors.

Finding no reversible error in this record the decree of the circuit court will be affirmed.          *Decree affirmed.*