DETERMINED IN THE

## THIRD DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS,

### DURING THE YEAR 1905.

---

### Theodore S. Chapman, Executor, v. Thomas F. Ferns, Conservator.

1. CONSTRUCTIVE TRUST—*when not established.* Held, from the particular evidence in this case, that a constructive trust was not established.

2. SET ASIDE—*when conveyance from child to parent will not be.* Where a conveyance from a child to a parent is reasonable, fair, for the best interests of the former, was voluntarily and understandingly entered into and long acquiesced in by him, no ground of public policy demands that it be set aside as constructively fraudulent.

Contested claim in court of probate. Appeal from the Circuit Court of Jersey County; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the May term, 1903. Reversed and remanded. Opinion filed January 6, 1905.

ED. J. VAUGHN, for appellant.

PATTON & PATTON, for appellee.

MR. PRESIDING JUSTICE BAUME delivered the opinion of the court.

By a former opinion of this court filed in this case the judgment of the trial court was reversed and the cause remanded. A petition by appellee for a rehearing, having been filed, the questions involved have been fully reconsidered by the court and the former conclusion that the

judgment should be reversed and the cause remanded, is adhered to.

This is an appeal from a judgment of the Circuit Court of Jersey County, rendered upon a claim filed by the conservator of Alexander M. Cheney against the estate of Prentiss D. Cheney, in the County Court of that county and certified to the Circuit Court because the county judge was a witness in the case. The case was tried by the court, a jury being waived, and judgment was rendered in favor of the claimant for $29,977, to be paid in due course of administration as of the sixth class. The only ground for reversal urged upon our attention by appellant, is, that the finding and judgment of the court is not supported by the evidence in the case.

Mary D'Arcy, the maternal grandmother of Alexander M. Cheney, died testate in 1887, and her will bequeathing to him one-half of the residue of her estate, to be paid to him upon his arriving at his majority, was probated in Morris county, New Jersey, August 25, 1887. On September 29, 1891, Alexander M. Cheney, then twenty-three years of age, executed an assignment of all his interest in the legacy to him from his grandmother, to his father, Prentiss D. Cheney, for the express consideration of $20,000. The persons named in, and who qualified as executors of the will of Mary D'Arcy, having died before the estate was finally settled, Philander B. Pierson, was, on December 26, 1896, appointed administrator *de bonis non* with the will annexed, of her estate. The legacy in question was paid to Prentiss D. Cheney, as assignee of Alexander M. Cheney, in three installments, as follows: $13,000, January 10, 1898, $3,572.64, January 25, 1898, and $8,227.10, December 28, 1899. The judgment rendered in this case includes interest on these several payments. Prentiss D. Cheney died testate in Jersey county, Illinois, July 3, 1900, leaving a widow and Alexander M. Cheney, his son. By his will probated August 4, 1900, Prentiss D. Cheney devised and bequeathed the greater part of his large estate to a trustee for the benefit of his son, Alexander M. Cheney, the trust thereby created being a spendthrift trust.

It is insisted by appellee that under the evidence in this case, a constructive or implied trust for the benefit of Alexander M. Cheney, must be declared in Prentiss D. Cheney, with reference to the legacy paid to him, as assignee of said Alexander M. Cheney, by the administrator of Mary D'Arcy. A constructive trust has been authoritatively defined as where "a person obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rule of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interests of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust, by construction, out of the circumstances or relations, and this trust they will fasten upon the conscience of the offending party and will convert him into a trustee of the legal title, and order him to hold it, or execute the trust in such manner as to protect the rights of the defrauded party, and promote the safety and interests of society." Pope v. Dapray, 176 Ill. 478. The rule is further laid down in that case, quoting from Perry on Trusts, sec. 168, as follows: " Constructive trusts may be divided into three classes, to be determined according to the circumstances under which they arise : First, trusts that arise from actual fraud practiced by one man upon another. Second, trusts that arise from constructive fraud. In this second class the conduct may not be actually tainted with moral fraud or evil intention, but it may be contrary to some rule established by public policy, for the protection of society. Thus, a purchase made by a guardian of his ward, or by a trustee of his *cestui que trust*, or by an attorney of his client, may be in good faith, and as beneficial to all parties as any other transaction in life, and yet the inconvenience and danger of allowing contracts to be entered into by parties holding such relations to each other are so great, that courts of equity construe such contracts *prima facie* to be fraudulent, and they construe a trust to arise from them." That such a trust may be established by parol evidence, is not controverted in this case.

The assignment by Alexander M. Cheney to his father, Prentiss D. Cheney, is absolute in form, and contains no suggestion that a trust was intended to be created.

Elmer King, a lawyer of Morristown, New Jersey, and a witness for appellee, testified: " He (Prentiss D. Cheney) told me that, while not a lawyer, he had a large collection of law books in his home in Jerseyville, Illinois, and he was much more accustomed to law business than his son, and that the assignment was made to him in order that he might commence and press his son's claims or interests against the estate and without bringing his son along.  My recollection is that he told me nothing had been paid, but whatever the result of the litigation might be, it was for his son.  I think he also told me that he had then advanced or was about to advance to his son some amount of money in anticipation of securing this money from the D'Arcy estate.  Mr. Cheney told me that his son had been a little wild, and that he intended to make, or had made a will in which he would leave his property, or some part of his property in trust for his son; did not give me to understand that that was to be the consideration for the assignment."

Gilead P. Cheney, a brother of Prentiss D. Cheney, testified that he knew Prentiss D. Cheney had entire control of the interests and business of his son until his death; that Prentiss D. Cheney had charge of the land devised to his son by Dr. D'Arcy, the grandfather of Alexander M. Cheney, and that the father transacted the business of his son in a general way, during and after the son's minority; that the witness had more than one conversation with Prentiss D. Cheney respecting the interest which Alexander M. Cheney had in his grandfather's estate.  This witness further says: " He (Prentiss D. Cheney) said he never paid Alexander M. Cheney anything for the assignment; didn't expect to, except he had to furnish him money and so on to live on, but not out of this transaction; he had the proceeds from the land and plenty of other resources to furnish him money to live on."

Conceding that the evidence in the case shows that no

money consideration was in fact paid by Prentiss D. Cheney to his son for the assignment of the legacy, that it was inspired by the fact that Prentiss D. Cheney, in view of his superior capacity and business experience, was the better qualified to protect and enforce the rights of his son in an estate largely involved in litigation, and to the end that he would manage and conserve such legacy when realized and transmit the same to his son in such manner as would best promote the latter's physical, moral and financial welfare, does it follow under the general doctrines prevailing in equity, above quoted, that a constructive trust must be declared in Prentiss D. Cheney for the benefit of his son, entitling the latter to the payment of such legacy to him upon demand, when it appears that the assignment was voluntarily executed by the son, with full knowledge upon his part of its import and effect; that it was a righteous transaction, as being calculated to restrain the son in his spendthrift course; and that the son was liberally provided for in his father's will, in such manner as in the best judgment of the father, would best conserve the interests of the son? We think not. Proof of a want of actual consideration, alone, is not sufficient to alter the effect of the assignment as an absolute transfer of the legacy; it can only be availing in connection with proof of fraud or other improper conduct practiced by the assignee upon the assignor, or necessarily implied in law by the fact that a fiduciary relation existed between them, and that they were parent and child. The record contains no suggestion that Prentiss D. Cheney practiced any actual fraud upon his son. If fraud there was, it was constructive, or such as the law implies, because of the fiduciary and natural relations of the parties. That Alexander M. Cheney fully understood and appreciated the force and effect of the assignment, as divesting him of all his interest in the legacy assigned, cannot be successfully controverted. He so stated to John O. H. Pitney, attorney for the administrator of his grandmother's estate, and an order of court entered of record in the Orphans Court of Morris county, New Jersey, on April 26, 1897, contains

the following:  " And it further appearing that Alexander M. Cheney, one of the parties cited, has now appeared in open court and disclaimed any interest in the estate of Mary D'Arcy, deceased, he stating that all his interest was assigned by him in writing to Prentiss D. Cheney, on the 29th day of September, 1891."   On December 1, 1899, Alexander M. Cheney joined with his father in executing a release and refunding bond to the administrator of the estate of Mary D'Arcy, deceased, the recitals of which recognize the assignment in question, and evidence full knowledge on the part of Alexander M. Cheney, of the payment to his father of the entire amount of the legacy.

So far as the record shows, Alexander M. Cheney never claimed nor asserted any right to the legacy after the execution of the assignment.   The claim now litigated was filed by his conservator March 14, 1902, more than ten years after the date of the assignment; nearly two years after the death of Prentiss D. Cheney, and four years after the latter, with the knowledge of his son, had collected over $16,000 to apply upon the legacy.

In Ferns v. Chapman, 211 Ill. 597, it is held, " That in case of a conveyance from a child recently of age, to a parent, the burden of proof is upon the parent to show that the transaction was free from fraud and the influence of the parent growing out of the fiduciary relation existing between the child and the parent—that is, in the language of the adjudicated cases, that the transaction was ' a righteous one.'"   Further, it is said in that opinion:  " It is not the relation of parent and child which avoids the transfer, but the presumption of undue influence growing out of that relation when unrebutted, and while the court should view a transfer from a child to a parent with a critical eye, still if the court can see, from the evidence, the conveyance was voluntarily made and was fully understood by the child, and was for the best interest of the child, it will be sustained."

Applying this test to the assignment in question in this case, we are constrained to the conclusion that the greater

weight of the evidence tends to establish the facts necessary to rebut the legal presumption of undue influence arising out of the fiduciary and natural relations existing between the parties, and that the trial court should have held the assignment to be a valid, absolute transfer of the legacy. The proof tends to show that the body of the assignment was in the handwriting of Alexander M. Cheney; that it was executed and acknowledged by him as his free and voluntary act and deed; that with full knowledge of the import and effect of the assignment and of the payment to his father of the legacy assigned, he long acquiesced in such assignment and payment; that at the time the assignment was executed, he was inclined to be wild and a spendthrift, and so continued until the death of his father; and that the father by his will made liberal provision for the son, in such manner as to best promote the latter's reformation and ensure the conservation of the estate for his benefit. The evidence also tends to show that Alexander M. Cheney, at the time he executed the assignment, had other property in his own right, sufficient to realize an income of $6,000 to $10,000 per annum, so that the assignment of the legacy in question did not impoverish him or make him a dependent.

The case of White v. Ross, 160 Ill. 56, cited by appellee in support of the finding and judgment in the case at bar, presents a state of facts so variant from the facts involved here, that it is rather an authority favoring the contention of appellant.

The question of unreasonableness and unfairness in the transaction is a controlling one, and when it appears that a conveyance from a child to a parent is reasonable, fair, for the best interests of the grantor, and was voluntarily and understandingly entered into and long acquiesced in by him, no ground of public policy demands that it be set aside as constructively fraudulent. This conclusion is supported by the cases of Pope v. Dapray, *supra*, and White v. Ross, *supra*.

Furthermore, what is said in Ferns v. Chapman, *supra*, as to the laches of Alexander M. Cheney, in instituting

Chapman v. Ferns.

proceedings to set aside the deed involved in that case, is applicable in bar of the claim filed upon his behalf in this case.

For the foregoing reasons, the judgment will be reversed and the cause remanded.

*Reversed and remanded.*