(No. 18226.—Decree affirmed.)
GEORGE ALBERT HOUSEWRIGHT, Appellee, *vs.* EMMA
STEINKE, Appellant.

*Opinion filed June 22, 1927—Leave to file petition denied Oct. 5, 1927.*

1. DEEDS—*party standing in a confidential relation must prove transaction for his benefit was just and fair—minors.* While undue influence which will avoid a deed must go to the extent of depriving the grantor of his free agency and a conveyance voluntarily made will not be set aside, yet where the parties stand in a confidential relation courts will presume a transaction of which the dominant party obtained the benefit was fraudulent, regardless of the existence of actual fraud, undue influence or coercion; and such party has the burden of proving the transaction was just and fair, especially where the rights of a minor are involved.

2. SAME—*conveyance by child to parent without consideration must be shown to have been for child's benefit.* Where a deed is procured without consideration, by a parent from a child for the property of the child, the burden is upon the parent to show that the transaction was fair and was entered into by the child fully understanding its rights and fully comprehending the transaction and that the transaction was for the benefit of the child.

3. SAME—*when deed from child to parent will be set aside—trust.* Although a child, having just attained majority, makes a conveyance to her mother of all her interests in her deceased father's estate with full understanding of the effect of the transaction and after having consulted persons other than the grantee, yet where the consultations were solely in regard to the best method of protecting the property from interference on the part of the grantor's prospective husband, and where the conveyance was made solely for that purpose and was without consideration, the deed will be set aside at the suit of the grantor's minor heir, as a constructive trust will be raised making the grantee the trustee of the legal title for the benefit of such heir.

4. TRUSTS—*when constructive trust will be raised.* Wherever a person obtains the legal title to property by virtue of a confidential relation and influence or under such circumstances that he ought not, in equity and good conscience, hold and enjoy the beneficial interest, courts of equity, in order to administer complete justice between the parties, will raise a trust, by construction, out of such relations or circumstances, and will convert the holder of the legal title into a trustee thereof and order him to execute the trust in such manner as to protect the rights of the defrauded party.

5. SAME—*constructive trusts are raised without regard to intention.* Constructive trusts are raised by equity for the purpose of working out right and justice though there was no intention to create such relation and often directly contrary to the intention of the party holding the legal title.

THOMPSON, J., dissenting.

APPEAL from the Circuit Court of McLean county; the Hon. EDWARD BARRY, Judge, presiding.

CHARLES I. WILL, and JOHN M. SULLIVAN, for appellant.

JESSE E. HOFFMAN, for appellee.

Mr. CHIEF JUSTICE HEARD delivered the opinion of the court:

Albert E. Steinke, grandfather of appellee, George A. Housewright, died intestate on November 21, 1914, leaving his widow, Emma Steinke, appellant, and two children, Lena and Clara F. Steinke, as his only heirs-at-law. Emma Steinke was appointed administratrix and filed an inventory showing the ownership of about 185 acres of land in McLean county and personal property valued at about $20,000. After the death of Steinke the family continued to live in the home upon the farm until Lena was married. Clara went to grade school, to Bloomington high school for two years, to Normal school for one year, and to business college. After finishing the business course she was employed in a department store in Bloomington for more than a year prior to the making of the deed in question, which was dated August 3, 1921, and acknowledged August 5, 1921. In the latter part of 1919 Clara became acquainted with a traveling salesman whose home was in St. Louis and she became engaged to be married to him. He visited her a number of times at her home, and she visited him in St. Louis on at least four occasions, on two of which she

was accompanied by her mother. On one of these visits Clara and her mother, with her fiance and a real estate agent, went to look at a number of properties in St. Louis with the purpose of buying, and found one consisting of two apartments which suited them, and Mrs. Steinke agreed to purchase the same for $12,500. Clara and her prospective husband were to live in one apartment, paying no rent therefor, and the rent received for the other apartment was to be paid to Mrs. Steinke. The property was not purchased. The engagement continued until September, 1921. Clara met George T. Housewright in 1921 and was married to him in January, 1922, and they went to live in Peoria, where Housewright was employed. Clara died in November, 1922, having previously given birth to appellee. Some time prior thereto Mrs. Steinke suggested to Clara that she should have a home of her own, and on September 25, 1922, Clara entered into a contract for the purchase of some property in Peoria for $7500. There was a mortgage of about $3800 on the property. A payment of $1500 was made by Mrs. Steinke at the time of making the contract, and a note for the balance of the purchase price, less the amount of the mortgage, was signed by Clara and Mrs. Steinke. Prior to the time of taking the deed under the contract Clara died, and the balance of the purchase price, less the mortgage, was paid by Mrs. Steinke. The deed was made to George T. Housewright and Mrs. Steinke as joint tenants. Housewright paid no part of the purchase price. The premises were occupied by appellee and his father, and no rent has been paid to Mrs. Steinke and no interest paid to her for her investment in the property. July 31, 1924, the bill of complaint herein was filed, alleging that the deed from Clara to her mother, which was a quit-claim deed for the consideration of one dollar and love and affection and included all interest in the real and personal property left Clara by her father, was without consideration and was made by Clara while she was under the domination and

control of her mother, and should be set aside as having been, in law, fraudulently obtained from Clara by her mother, and that the court should decree that Mrs. Steinke held such property in trust for Clara and her heir. Mrs. Steinke filed an answer to the bill, in which she denied that the deed was obtained by fraud or undue influence, and alleged that it was made voluntarily and at the suggestion of others and after consultation with and upon the advice of Clara's attorney and other of her friends. The cause was referred to a master in chancery, who, after hearing the evidence, filed a report recommending that the bill be dismissed for want of equity. Objections made before the master were allowed to stand as exceptions to his report, and upon a hearing upon the same the court entered a decree finding that at the time of the making of the deed there was a fiduciary relationship existing between Clara and her mother and that the deed was procured by fraud and undue influence, and decreed that it, including the assignment of personal property, be set aside, from which decree an appeal has been perfected to this court.

It is contended by appellant that the deed of August 3, 1921, by which Clara conveyed her property to appellant, was the deliberate, intentional act of Clara, free from influence on the part of appellant. The deed in question was made within a few months after the grantor had attained the age of eighteen years, at a time when she was living with her mother, and, as shown by the evidence, under the domination of her mother. There is no question but that a fiduciary relationship existed between them.

William Wilson, manager of the office where Clara was employed, testified to a conversation with her, during which she told him that she was going to be married and had not known the young man a great while and asked his advice as to whether or not it would be a good thing for her to turn her property over to her mother; that he advised her to do so; that within a week or two thereafter he was

called to a conference at the People's Bank, attended by Leslie Owen, William Moore and Mrs. Steinke, to talk about the advisability of Clara conveying her property to her mother.

Luther Hinckle, an attorney, testified that about the middle of June, 1921, Clara consulted him and told him that she was going to be married to a man in St. Louis; that she and her mother had been in St. Louis to look at some residence property and flats with the intention of buying a home for Clara and her prospective husband; that the deal had fallen through; that she had received a letter from him asking that she and her mother finance some kind of a business deal; that it was bothering her because he wanted all this financial help before the marriage, and she wondered if she hadn't better do something with her property; that she detailed to him the property that was included in the estate; that he advised her to transfer the land to her mother, and that at a later conversation she informed him that she had done so.

William Moore, president of the People's Bank, testified to participating in several conversations at the bank, at some or all of which Mrs. Steinke, Leslie Owen and Wilson were present; that his advice was asked by Owen, and he advised that the property be transferred by Clara to her mother.

Mabel Johnson, the notary public who took the acknowledgment to the deed, testified that at the time of the making of the deed she worked for Leslie Owen, a lawyer since deceased, who, she thought, at the time of the making of the deed and several years prior to that had been the attorney for Mrs. Steinke, the grantee in the deed; that on the day the deed was made Clara came to Owen's office to have the deed drawn; that on the day it was acknowledged she came to the office and acknowledged the deed; that she did not remember whether any person was with Clara on either occasion.

While the evidence shows that Clara advised with persons other than her mother with reference to this transfer of her property, it is evident that the mother participated in conferences with reference thereto. While Clara was seeking advice as to how her property could be protected from interference on the part of her prospective husband, it is evident that she was not seeking advice with reference to making a gift of all her property to her mother. The evidence shows that the transfer was made for the purpose of preventing the prospective husband from obtaining any interest in or control of the property, and it does not show that it was the intention of the parties that the deed should operate as a gift and transfer to appellant the property absolutely free from any future claim of Clara to any interest therein. While, where a deed is the voluntary act of the grantor with full knowledge of its nature and effect and is in accordance with the grantor's desire and purpose, the existence of a fiduciary relation between them does not render the conveyance void and undue influence which will void a deed must go to the extent of depriving the party of his free agency, (*Hoelscher* v. *Hoelscher,* 322 Ill. 406,) yet courts will guard sedulously the rights of minors, and the law is well settled that where a fiduciary relation exists it is incumbent upon one who receives the benefit of an agreement made under such relationship to show that the agreement was just and fair. Where two persons stand in such relationship that confidence is necessarily imposed by one in the other and an influence which naturally grows out of that confidence is abused while such confidence continues or an advantage is obtained by reason of such influence over the confiding party, the person seeking such advantage will not be permitted to retain the same although the transaction could not have been impeached if no such confidential relation had existed. This is true regardless of the existence of actual fraud, undue influence or coercion. Courts will indulge in the presumption that all transactions be-

tween parties occupying confidential relations to each other by which one obtains an undue advantage of the other are fraudulent. (*Crossman* v. *Keister,* 223 Ill. 69.) Where a deed is procured by a parent from a child for the property of the child without consideration, the burden is upon the parent to show that the transaction was fair and was entered into by the child fully understanding its rights and fully comprehending the transaction by which it parted with the title to its land and that the transaction was for the benefit of the child. (*Ferns* v. *Chapman,* 211 Ill. 597; *McLaughlin* v. *McLaughlin,* 241 id. 366; *Hays* v. *Feather,* 244 id. 172.) While the evidence in this case shows that Clara understood her rights and that she was parting with the title to the land it does not show that she fully comprehended the effect of the transaction, and the evidence shows that it was not for her benefit.

A constructive trust arises where a person clothed with some fiduciary character, by fraud or otherwise gains something for himself. If a person obtains the legal title to property by virtue of a confidential relation and influence, under such circumstances that he ought not, according to the rules of equity and good conscience as administered in chancery, to hold and enjoy the beneficial interest of the property, courts of equity, in order to administer complete justice between the parties, will raise a trust, by construction, out of such circumstances or relations, and will convert the holder of the legal title into a trustee thereof and order him to execute the trust in such manner as to protect the rights of the defrauded party. Constructive trusts are raised by equity for the purpose of working out right and justice though there was no intention of the party to create such relation, and often directly contrary to the intention of the one holding the legal title. (*Kochorimbus* v. *Maggos,* 323 Ill. 510.) When these rules are applied to the facts of this case it must be held that the deed from Clara to her mother of the property in question and its reten-

tion by the mother for her own use created a constructive trust therein in favor of Clara, and that upon the death of Clara appellant became the trustee of the legal title for the benefit of appellee.

The decree of the circuit court of McLean county will therefore be affirmed.                   *Decree affirmed.*

Mr. JUSTICE THOMPSON, dissenting.