## Craton v. Fritschner.

February 11, 1949.

Rehearing denied March 25, 1949.

Eugene E. Pendergrass and Jones & Jones for appellant.

Robert Hubbard for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

The appellant, Willette F. Craton, brought this equity action on October 15, 1946, to set aside a deed which she and her husband had executed and delivered to her father, Charles H. Fritschner, on August 27, 1938. The court overruled a demurrer to the petition, and on motion of the plaintiff referred the case to the commissioner of the court to take proof and make recommendations on the issues raised by the pleadings. The commissioner in his report expressed doubt as to the sufficiency of the petition, but found that plaintiff had established

the facts alleged in her petition and, in view of the fact that a demurrer thereto had been overruled, recommended that the deed be set aside. The defendant excepted to the commissioner's report, and moved the court to set aside the order theretofore entered overruling defendant's demurrer to the petition. Upon submission of the case the court sustained the motion over plaintiff's objection, set aside the former order, and entered an order sustaining the demurrer to the petition. The plaintiff tendered an amended petition, and the court sustained defendant's objection to the filing thereof. The plaintiff declined to plead further, and the court dismissed her petition.

Appellant is the only child of Charles H. Fritschner and Madeline Fritschner, both deceased, who were married in 1898. In 1913 Charles H. Fritschner purchased a lot on Windsor Place in Louisville, and took the title in his own name. He built a house on the lot, and lived there until November 15, 1927. On February 7, 1920, he conveyed the house and lot to his wife, Madeline Fritschner, the consideration being love and affection, and on November 15, 1927, they sold the property for approximately $20,000. On February 28, 1928, a house and lot on Slaughter Avenue in Louisville was purchased out of the proceeds of the sale of the Windsor Place property, and the title was taken in the name of Madeline Fritschner. Appellant lived with her father and mother until her marriage in January, 1927. Since her marriage she has lived in Erie, Pennsylvania. Appellant's mother died intestate on September 18, 1935, and on August 27, 1938, appellant and her husband conveyed to her father, Charles H. Fritschner, by quitclaim deed, the Slaughter Avenue property which she had inherited from her mother subject to her father's curtesy interest. The consideration recited in the deed was: "* * * a Valuable Consideration paid, the receipt of which is hereby acknowledged, and for the love and affection which the parties of the first part have for the party of the second part." Actually, no consideration was paid. Charles H. Fritschner married the appellee, Ethel Rose Fritschner, on June 3, 1944, and died testate on April 10, 1946. In his will executed on September 29, 1944, after making a special bequest for the benefit of his daughter, he provided: "As my daughter, Willette

F. Craton, is in comfortable circumstances and is otherwise provided for, all the rest and residue of my estate, real and personal, wheresoever situated and of whatever nature, I give, bequeath, and devise to my beloved wife, Ethel Rose Fritschner, to be hers absolutely and in fee simple." The house and lot on Slaughter Avenue constituted most of the residue.

It seems to be appellant's claim that because of the relationship of confidence and trust existing between her and her father, she was overreached and induced to convey to him the house and lot which she had inherited from her mother, and that the conveyance was procured by him by fraud and misrepresentation. She made no such allegations in her petition. She alleged that: "* * * from her early childhood until his death, she and her father were close and devoted friends and she relied implicitly upon his integrity in all of their mutual transactions and never doubted his purposes. That, where their business affairs were affected, such a relation of trust and confidence existed that she accepted his advice in all matters and complied with his wishes or directives without question."

And further:

"* * * that prior to her father's death, and at the time she and her husband conveyed said property to her father, she was under the mistaken impression that her father had owned the property before it had belonged to her mother, and that he had transferred it in trust to her mother during her lifetime for reason of their joint financial security, and that her mother had failed to reconvey it to him before her death, and that it thereby descended to plaintiff with a moral obligation resting upon her to transfer her said inherited interest therein to her father and thus restore his interest in the property. That, so believing, she and her husband made said conveyance, and neither her father nor anyone else paid either of them anything whatsoever therefor; and, although knowing the real condition concerning the property, and plaintiff's said misconception in regard to her duty, her father not only failed to disclose the truth to plaintiff but induced the execution of the deed and affidavit after he had caused them to be prepared for that purpose.

"Plaintiff says that, since her father's death, she has learned that the said real property never belonged to him, until she and her husband so conveyed it, that he did not give it in trust to her mother, as they had believed he had, at the time of said conveyance; that no obligation rested upon plaintiff and her husband as a consideration for said transfer to her father; and the supposed obligation which impelled them to do so was falsely conceived and without any foundation in fact."

In the amended petition which she offered to file after the court sustained the demurrer to the petition, she alleged that after her mother's death her father held himself out as the owner of the property and prevented her from knowing her real interest therein; i, e., that she was the owner in fee simple; that he represented to her that: "* * * the property in question belonged to him and he had put it in her mother's name for their joint security reasons, and she had failed to reconvey it to him before her death, and the legal title had thereby descended to plaintiff, and that it was plaintiff's duty to convey to him the title she had so inherited from her mother."

Appellant filed with her petition as an exhibit a certified copy of an affidavit subscribed and sworn to by her before a notary public on July 5, 1938. The affidavit reads:

"The affiant, Willette F. Craton, states that she is the daughter of Madeline D. Fritschner who died intestate, a resident of Jefferson County, Kentucky, on September 18, 1935, leaving surviving her her husband, Charles H. Fritschner, who is still living and this affiant as her child and sole and only heir at law. The affiant states that there was never but the one child born to her said mother, this affiant, namely, Willette F. Craton, 36 years of age, whose husband is Forman H. Craton, residing at Erie, Pennsylvania.

"The affiant states that the entire estate of the said Madeline D. Fritschner descended at her death to this affiant, subject to the dower interest of her father, Charles H. Fritschner."

The affidavit which was recorded in the office of the Clerk of Jefferson County, as required by KRS 382.120, contradicts the allegation in the petition that appellant

was unaware of the nature of her interest in the property when she executed the deed to her father.

It is a universally recognized rule that cancellation of a deed calls for the exercise of extraordinary power by a court of equity, and such power should not be exercised except in a clear case and on strong and convincing evidence. Harned v. Smoot, 306 Ky. 813, 209 S.W.2d 485; Jones v. Jones, 305 Ky. 5, 202 S.W.2d 746; Fields v. Cornett, 254 Ky. 35, 70 S.W.2d 954. In Lossie v. Central Trust Company, 219 Ky. 1, 292 S.W. 338, 340, Frank Lossie brought an action in equity seeking to secure the cancellation of a deed which he had made to his mother. The petition contained far stronger allegations of fraud and misrepresentations than do the petition and amended petition in the present case. A demurrer to the petition was sustained, and this court, in affirming the judgment, said: "The trial court properly sustained a demurrer to his petition. These allegations are grossly insufficient. No fraud is pointed out, no mention is made of any misrepresentation of facts, and the allegations are principally conclusions of the pleader. The most that can be said for the allegations of this petition is that these parties did not understand what their rights were under the will of Frank Brooks, and Frank Lossie thinks now his mother may have erred in her statement to him of what his rights were. This may be true, but that is not enough to justify the cancellation of this deed. The cancellation of an executed contract is the exertion of the most extraordinary power of a court of equity, which ought not to be exercised, except in a clear case and on strong and convincing evidence."

The opinion concluded: "The allegations of this petition fall far short of showing clearly and convincingly such fraud, duress, mistake, or undue influence as is required to warrant the cancellation of a deed, made by parties who were both sui juris at the time."

In view of the foregoing rule and authorities, the court ruled correctly in sustaining the demurrer to the petition and declining to permit the amended petition to be filed.

Appellant would be in no better position if her petition had stated a cause of action. The evidence utter-

ly fails to show any fraud, misrepresentation, undue influence or duress on the part of appellant's father. Appellant is an intelligent, well educated woman, and her husband is an experienced business man. She testified that she knew her mother had no assets or income out of which the property in question could have been purchased. She claims that it was her impression that her father had owned the property in question and had conveyed it to her mother, and that she, therefore, felt morally obligated to convey it back to him. This impression was substantially correct. He owned the house on Windsor Place which he conveyed to his wife, and out of the proceeds of the sale of that house the property in question was purchased. Conveyances by children in favor of their parents are scrutinized closely, and will be set aside where the conveyance was induced by fraud, misrepresentation or undue influence on the part of the parent, but, here, such remedy is not authorized either by the pleadings or the proof.

The judgment is affirmed.