**Joy M. DUTCHER, and Martin Thomas Dutcher, Plaintiffs–Appellants,**

v.

**Martin Luther DUTCHER, Defendant–Appellee.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 19, 1986.

Affirmed by Supreme Court Aug. 15, 1988.

John M.L. Brown, Nashville, for plaintiffs-appellants.

R. Whitney Stevens, Jr., Stevens, Bagley & Stevens, Fayetteville, for defendant-appellee.

## OPINION

TODD, Presiding Judge.

The plaintiffs, Joy M. Dutcher and Martin Thomas Dutcher, have appealed from the Chancellor's decree dismissing plaintiffs' suit against the defendant, Martin Luther Dutcher for rescision of a quitclaim deed and incidental remedies.

Joy M. Dutcher and Martin Luther Dutcher are former husband and wife, and Martin Thomas Dutcher is their son. On July 28, 1978, the marriage between Joy M. and Martin Luther Dutcher was dissolved by a final decree of divorce which divided the marital assets of the parties. As a part of said division, Joy M. Dutcher was required to and did quitclaim, release and convey unto Martin Luther Dutcher all of her interest in 4 tracts of land previously held by the parties as tenants by the entirety. The decree further provided:

It is hereby ordered that the defendant (Martin Luther Dutcher) will replace plaintiff's name on the deeds to the property heretofore described in paragraph 4, (a), (b), (c) and (d) with the name of their minor son, Martin Thomas Dutcher, who will hold the said tracts of land with his father as tenants in common.

The defendant may use this decree as a muniment of title reflecting his ownership of said real estate.

Martin Luther Dutcher never took any steps to implement the quoted provision of the decree. On May 2, 1980, Martin Thomas Dutcher attained the age of majority (18). On May 18, 1980, Martin Thomas Dutcher executed and acknowledged a quitclaim deed to his father conveying his interest in the property mentioned in the above quoted part of the decree. The deed was recorded March 22, 1985. It is this instrument which plaintiffs seek to have invalidated.

The complaint alleged that the son signed the deed on the instruction of his father, that the son did not know or understand the nature of the document, and that the deed was obtained by fraud, duress, in breach of confidential relationship and without consideration. The answer denied each of the foregoing allegations of the complaint.

The complaint prayed for rescision of the quitclaim deed, a determination of the rights of the parties, an accounting for mesne profits and a judgment for damages.

The Chancellor's memorandum states:

3. Prior to the divorce, Mr. Dutcher, hereafter referred to as the father, had been an engineer earning substantial income but his health had deteriorated due

to high blood pressure and arthritis and his gainful employment ceased.

4. On May 18, 1980, the father asked his son to deed him the son's interest in the three tracts because he needed the money to live on. (Testimony of Mr. Dutcher) The deed states a consideration of one dollar was paid but it is admitted that no monetary value was given.

5. The father testified that he explained his health and employment problems to the son, that the son read over a prepared deed while the father called and made arrangements for a notary public, that the son drove them to the notary and the son signed the deed in the presence of the notary.

6. The son admits that he signed the deed, but says that, at the time, didn't know the nature of the instrument.

7. The son's only explanation for signing is that he was told by his father to do so.

8. At the time the deed was executed, the father was in less than good health and the son was six feet, three inches tall, weighed 200 pounds and on a basketball scholarship in college. The son admitted being sober, about his wits and in full control of his own actions when he signed the deed.

9. The son stated that he was not told anything by his father about the deed. He admitted that his father didn't tell him anything that either tricked or persuaded him to sign. According to the son there was only the one request in front of the notary for him to sign and no other discussion....

The decree dismissed the suit.

On appeal, plaintiffs present the following issues:

1. Whether the trial court erred under the facts of the instant case by approving the conveyance of valuable farm land from an 18-year-old son to his father.

2. Whether the trial court erred in refusing to order Father to make an accounting in this case.

3. Whether the trial court erred in refusing to declare Father to be a constructive trustee in the instant case.

4. Whether the trial court erred in refusing to order a partition of the property which is the subject of this litigation.

5. Whether the trial court erred in refusing to award punitive damages against Father.

Defendant testified in pertinent part as follows:

Q. What explanation did you give to Martin about why he should sign this deed?

A. The explanation I gave my son was for three, four, five items. First, for two solid years I had tried to find employment. As a result of my disability I could not find work anywhere. I was trying to make a living off these farming operations and I just couldn't make it. Period.

That's what I explained to him. That my health was failing and that I was on all kinds of medication and that I just could not cut the hay from May to September every year and run the operation by myself. It was humanly impossible. So therefore I have got to get rid of the farms and use the money as income for me to live.

Q. You didn't sell them from 1980 to the present, did you?

A. Yes.

Q. You have sold them?

A. Well, yesterday I had an offer to trade my Molina Farm for a house in Huntsville. It's a rental house that I can use to pay for my missionary work.

Q. But you haven't really done anything except for that; just to get an offer.

A. After this is over with, it will be mighty fast.

Q. About this missionary work, you go to I believe it is the Philippines?

A. I went to Haiti in '81. In '82 I went to Africa. In '83 I went to the Philippines, a little orphanage. In '85 I went to the orphanage.

Q. Are you going somewhere in '86?

A. Yes, I am.

Q. What kind of work do you do over there?

A. I do agricultural missionary work, production, beef cattle.

Q. Are you out in the fields with these people that you're helping?

A. Yes, I am.

Q. So your health is not so bad that it keeps you from going all over the world and doing farm work, is it?

A. If you want to look at it that way, that's all right with me. I get a disability check from the government. I'm a disabled American veteran. That's all a matter of record, Mr. Brown.

The plaintiff, Martin Thomas Dutcher (son) testified in pertinent part as follows:

Q. Let's direct your attention to a visit that you made to Lincoln County after your eighteenth birthday, the visit that was on or around May 18, 1980. I want you to tell Chancellor Cobb what if anything your father told you about any documents you may have signed that day.

A. Yes, sir. Well, Your Honor, my father made no mention about the document that I signed that day.

Q. What about at the kitchen table? Did you look at anything on the kitchen table?

A. No, sir.

Q. Did he talk to you about his health?

A. No, sir. He would complain of ailments every now and then.

Q. He may have that day or not?

A. I don't know, sir.

Q. Did he explain to you anything about what you were signing?

A. No, sir, he did not.

. . . .

Q. Why did you sign it without reading it?

A. He told me to sign it.

Q. Why didn't you question him about it?

A. Because I never did question my father about it. I thought it might get him mad.

. . . .

Q. Did your father pay you anything for signing that deed back in 1980?

A. No, sir.

. . . .

Q. So obviously he didn't tell you anything that caused you to sign the deed other than the fact that he said sign here.

A. That's correct.

. . . .

Q. Was anybody controlling you that day?

A. In one respect my father was, sir.

Q. Now, you are fixing to tell me he told you to sign the deed.

A. Yes, sir.

. . . .

Q. He didn't tell you anything or do anything at all that mislead you or tricked you in any way. He simply told you to sign something and you say that you signed it and that's all there was to it.

A. Yes.

. . . .

Q. And obviously you knew that you were tenants in common, I assume, with your father on the three he got.

A. Yes.

. . . .

Q. And you knew that your father and you owned these other three farms.

. . . .

Q. When you came up did you ever ask him about his health?

. . . .

A. Yes, I asked him how he was feeling.

Q. Did he explain to you about the fact that he couldn't hold a job anymore?

A. No.

. . . .

Q. Did you bring the action?

A. No, sir.

Q. Your mother brought the action?

A. Yes, sir.

Appellants first rely upon undue influence.

Appellants rely upon an unreported opinion of this Court which is not in point

because in the cited case the deed was executed by an elderly parent to a son.

Also, *Kelly v. Allen*, Tenn.1977, 558 S.W.2d 845, is not in point because that case involved a conveyance by a mother to a daughter. Said opinion does reiterate the rule that it is not influence but undue influence that invalidates a conveyance or will.

In 26 C.J.S.Deeds, § 64, p. 780 the following text is found:

(2) Deed to Parent

A deed from child to parent may be invalidated for undue influence or abuse of confidence reposed, although the mere relationship of parent and child is not of itself sufficient to invalidate the deed of the child grantor.

The courts will closely scan a deed from child to parent, especially where the relationship between the parties is in fact confidential, and the deed is gratuitous or for a grossly inadequate consideration. Moreover, such a deed is invalid where it is the result of undue influence, imposition, or abuse of confidence, particularly where the grantor has not had the benefit of independent advice. The above rules apply in the case of a deed to one standing in loco parentis.

On the other hand, the parent does not necessarily bear a fiduciary relationship toward the child. A deed from a child to a parent is not void merely because of the existence of the parental relation, and such a deed will be sustained where voluntarily executed without abuse of confidence or imposition. Moreover, even where a confidential relationship exists between a parent and child, it will not invalidate the deed from the child to the parent, but merely cast on the parent the burden of proving that the deed was the free, voluntary, and clearly understood act of the child.

The foregoing text is supported by authorities from other jurisdictions as follows:

In *Sullivan v. Sullivan*, C.C.Mass. 23 Fed.Cas. No. 13,598 (1825) (a Federal case), a suit to set aside a conveyance by a daughter to her father was dismissed, and the Court said:

If this transaction had been between strangers, it would have been the duty of the Court to set it aside; for an assignment of an expectant interest by way of remainder requires for its support not only a valuable consideration, but the payment by the purchaser of the full market value of the interest conveyed. But a transfer of an expectant interest by a child to a parent is not viewed by a court of equity as a sale of the interest, but as a family arrangement, the validity of which is not to be tested by an inquiry whether an adequate price was paid. In *Bellamy v. Sabine*, 2 Phil. Ch. 439, the master of rolls said: "It has often been decided that in such transactions between a father and son, the ordinary rules which are applied to the acts of strangers are not to regulate the judgment of this court.... Fraud will indeed vitiate these, as well as all other transactions; but arrangements between members of the same family to assist their several objects, or relieve their several necessities, are affected by so many peculiar considerations, and are influenced by so many different motives, that they have been wisely withdrawn from the influence of the ordinary rules by which this Court is guided in adjudicating between other parties.

After discussing an English case in which a different rule was applied to a gift to a parent by a child recently come of age, the U.S. Court of Appeals in *Sullivan* stated:

In *Jenkins v. Pye*, 12 Pet. (37 U.S.) 241 [9 L.Ed. 1070] the supreme court ... distinctly and pointedly refused to establish it (the English Rule) in the equity jurisprudence of the United States.... [T]he rule there laid down ... is that such a conveyance is prima facie valid and that it is incumbent upon the party who denies its validity, to prove such an undue influence as requires the court to avoid the gift and restore the parties to their former condition. 23 F.Cas. p. 367.

In *Jenkins v. Pye*, 37 U.S. 241, 12 Peters 241, 9 L.Ed. 1070 (1838), cited above, the complainants sought to invalidate a deed of

a 23 year old daughter to her father. The U.S. Supreme Court denied relief and said:

> The bill takes the alternative ground that the deed ... was ... obtained by undue influence ... (which) the defendants positively deny ...
>
> The case of complainants stands alone on the broad and naked principle that all transactions or dealings between parent and child by which a benefit passes to the former is indicted ipso facto by the policy of the law. We deny that such is the settled rule of law, and confidently assert that in every adjudged case there was some circumstances· of undue influence proved and required by the court as a required ingredient. (citing authorities) 37 U.S. at 243.

In *Shackleford v. Shackleford,* 144 Ark. 365, 223 S.W. 561, 11 A.L.R. 730 (1920), children conveyed property to their mother who had a violent temper, dealt harshly with them to such extent that they had to do whatever the mother desired. Also, the deed was preceded by two weeks of "continued persistent entreaties and undue pressure including begging, pleading, crying and manifestations of anger". Citing and quoting an English case, the Court held:

> It follows from this language that the burden rests upon the parent, in this class of cases, to clear the transaction of every shadow of suspicion and to establish its fairness and good faith.

It is seen that *Shackleford* followed the English Rule which had been rejected by the U.S. Supreme Court.

The annotation following *Shackleford* at 11 A.L.R. 735, states:

> In a considerable number of cases, it has been broadly stated that in the case of a conveyance from a child to a parent, especially if it is a gift, the mere existence of the relationship raises a presumption of undue influence which, unless repelled by the facts and circumstances surrounding the transaction, will warrant a court of equity in setting the same aside. In most, at least, if not all of the following cases, there were facts or circumstances, in addition to the mere

relation itself, tending to strengthen the inference of fraud or undue influence; and there are few, if any, cases in which the court was called upon to declare the rule upon a hypothesis which included nothing but the bare relationship, and excluded all other facts and circumstances, e.g., the comparative ages, general condition of dependence or domination, existence or lack of consideration, and the like: ...

In *Towson v. Moore,* 173 U.S. 17, 19 S.Ct. 332, 43 L.Ed. 597 (1898), the U.S. Supreme Court held that, in respect to a gift from an aged woman to her daughter with whom she resides the burden of proving undue influence rests upon the plaintiff who seeks to set the gift aside.

Without reviewing individually the authorities cited under the above A.L.R. text, it is sufficient to state that they do not establish a clear and controlling rule contrary to *Sullivan, Jenkins* and *Towson.*

In *Giers v. Hudson,* 102 Ark. 232, 143 S.W. 916 (1912), the Arkansas Court upheld a deed from a daughter to her father, cited and quoted *Jenkins v. Pye,* supra, as follows:

> But we are not to indulge undue suspicions of jealousy, or to make unfavorable presumptions as a matter of course in cases of this sort. (Citing 1. Story Eq. Jur. 4th Ed. § 309) 143 S.W. 921.

In *Craton v. Fritschner,* 309 Ky. 683, 218 S.W.2d 14 (1949), the Kentucky Court of Appeals affirmed dismissal of a suit to set aside a deed by a daughter to a father stating that the evidence failed to show such fraud, misrepresentation or undue influence as would justify cancellation. However, the Court said:

> Conveyance by children in favor of their parents are scrutinized closely and will be set aside where the conveyance was induced by fraud, misrepresentation or undue influence of the parent.

In *Henderson v. Mainard,* 84 Okl. 244, 200 P. 441 (1921), the Oklahoma Supreme Court affirmed a judgment invalidating a deed by Bud Bowlegs to his mother, citing

and quoting from *Jenkins v. Pye,* supra and stating:

> The evidence (is) found amply sufficient to sustain the judgment of the trial court.

In *Walters v. Christensen,* 191 Wash. 602, 71 P.2d 664 (1937), the Washington Supreme Court affirmed the dismissal of a suit to set aside a deed from a child to a father on grounds of laches stating:

> It is true that the law looks with suspicion on conveyances between ... parent and child, and courts are ready to set such conveyances aside on very slight evidence that advantage was taken of the relation of trust and confidence between the parties.

In *Housewright v. Steinke,* 326 Ill. 398, 158 N.E. 138 (1927), the Illinois Supreme Court affirmed a judgment setting aside a deed from an 18 year old daughter to her mother where, as the Court found:

> There is no question but that a fiduciary relationship existed between them.

In the same opinion, the Court stated:

> Where a deed is procured by a parent from a child without consideration, the burden is upon the parent to show that the transaction was fair and was entered into by the child fully understanding its rights and fully comprehending the transaction by which it parted with the title to its land, and that the transaction was for the benefit of the child. (Citing Illinois authorities) 158 N.E. at 141.

In *Mees v. Steffey,* 303 Ill. 115, 135 N.E. 206 (1922), two children conveyed to their father and, after his death, sued to set the conveyance aside. The Illinois Supreme Court reversed a dismissal for laches, but said:

> The mere fact of the relationship of parent and child where the parental domination has ceased will not, of itself, raise a presumption of fraud or undue influence on the part of a parent in obtaining a conveyance or gift from a child.

In *Berkmeyer v. Kellerman,* 32 Oh.St. Rep. 239 (1877), the Supreme Court Commission affirmed a judgment invalidating a conveyance by a child on her 18th birthday of all of her earthly possessions for which

she had labored to a step-father who stood in loco parentis and guardian until the date of the deed.

In *Appeal of Worrall,* 110 Pa. 349, 1 A. 380 (1885), the Supreme Court of Pennsylvania invalidated a deed executed by an invalid child 30 days after attaining majority to a nurse/housekeeper who had full charge and care of him. The Court said:

> In this case, not only the nature and amount of the gift, but the suspicious circumstances, call upon the donee to prove that the transaction was fair and honest, and that the deed was not procured by undue influence. (1 A. at 386.)

In *Preston v. Preston,* 102 Conn. 96, 128 A. 292 (1925), the Supreme Court of Connecticut invalidated a trust conveyance made by a daughter at the suggestion of her adoptive mother shortly after reaching 21 years of age, but said:

> We are asked by the plaintiff to hold that the relationship between parent and child ... establishes a confidential relation, which raises a presumption of undue influence ... and throws upon the parent the burden of proving good faith and freedom from undue influence. This is the law in many jurisdictions, but not the rule obtaining in this state, where we have held the (parental) relationship is not fiduciary, and does not cast such a burden of proof. (citing authorities). The burden of proof therefore rests in the instant case upon the plaintiff to establish the fact of undue influence upon her by her parents.

In *Chapman v. Ferns,* 118 Ill.App. 116 (1905), the appellate court reversed a judgment invalidating a conveyance by a 23 year old adult to his father, on grounds that the evidence showed no undue influence arising out of the parental relationship.

*In re Coleman's Estate,* 193 Pa. 605, 44 A. 1085 (1899) involved a conveyance by a son to his mother. The Pennsylvania Supreme Court affirmed the dismissal of an attack upon the conveyance and said:

> The weight of opinion deducible from all the cases is that of *Reehling v. Byers,* 94

Pa.St. 316, "Business dealings between parents and children are not per se fraudulent. They must be treated just as are the transactions between ordinary debtors and creditors, and where the bona fides of their transactions is attacked, the fraud must be clearly proved." And as says Story, "To consider a parent disqualified to take a voluntary deed from his child, without consideration, is assuming a principle at war with all filial as well as parental duty and affection. (1 Story Eq.Jur. § 309, 44A–1087.)

In *Kalyvas v. Kalyvas*, 371 Pa. 371, 89 A.2d 819 (1952), a father was sued to quiet title by cancelling deeds of sons, and the sons alleged a confidential relation between themselves and their father. The appellate court followed the finding of the Trial Judge; affirmed his judgment, but held that, upon proof of a confidential relationship between parent and child the burden is cast upon the parent to prove that the deed of the child was free, voluntary and clearly understood by the child.

In *Donaldson v. Johnson*, 235 Ark. 348, 359 S.W.2d 810 (1962), the Arkansas Supreme Court affirmed a judgment dismissing a suit to invalidate a deed of a 81 year old sick woman to a granddaughter for lack of evidence of a confidential relationship and held that:

■ Mere proof of kinship alone between grantor and grantee does not give rise to a confidential relationship so as to raise a presumption that a deed was executed as a result of undue influence, duress or fraud.

In *Killough v. Devaney*, Ala. 1979, 374 So.2d 287, it was held that the facts established a relation of domination of a son over his father, but that the evidence established a bona fide transaction.

In *Higgins v. Pipkin*, Okl. 1961, 360 P.2d 231, the Supreme Court upheld the validity of a deed by an elderly mother to her youngest son and held that there was no evidence of undue influence or confidential relationship and that love and affection are a valid consideration for a deed between parent and child.

The state of the law as to conveyances from child to parent is summarized in 23 Am.Jur.2d Deeds § 208, pp. 218, 219 as follows:

Although it has been broadly stated that in the case of a conveyance from a child to a parent, especially if it is a gratuitous conveyance, the mere existence of the relationship raises a presumption of undue influence, most of the cases in which such a statement is made involve additional factors indicating undue influence, such as that the child was not strong mentally, or that the conveyance was without consideration, and, moreover, many courts have adopted the contrary view that the mere fact that a conveyance is from a child to a parent does not render it prima facie invalid. Clearly, however, the circumstances attending such a transaction will be vigilantly and carefully scrutinized by the court to ascertain whether there has been undue influence in procuring it.

■ The weight of American Authorities does not support a rule which would invalidate every deed from an adult child to a parent where there is no evidence that undue influence was or was not present. The stated rule for close scrutiny of such transactions is sufficient to avoid abuses of parental influence.

■ In the present case, the meager evidence quoted above negatives rather than indicates undue influence. In effect the son denied undue influence except his subjective fear of angering his father. No grounds of such fear were stated.

The evidence does not preponderate against the finding of the Chancellor that there was no undue influence.

■ Appellants next argue that the deed should be voided for fraud, citing *Owens v. Breeden*, Tenn.App.1983, 661 S.W.2d 887, which involved a deed by a 93 year old father to a son for an inadequate consideration. The son had been controlling the father's financial affairs. Inadequacy of consideration was but one of the circumstances which demonstrated fraud or un-

due influence. In the cited case, the father did not testify because he had died. In the present case, the conveyor, the son testified unequivocally that his father told him nothing to influence him to execute the deed.

■ Courts of equity relieve only against fraud which is operative. *Waterbury v. Netherland,* 53 Tenn. (6 Heisk.) 512 (1871).

Before one can obtain relief from fraud in equity, it must be shown that the complainant (plaintiff) relied upon the fraudulent representations. *Hamilton v. Galbraith,* 15 Tenn.App. 158 (1932); 37 C.J.S. Fraud § 29, p. 269.

While there is some evidence of a false representation by defendant (his testimony that he told his son he needed to sell the farms to get money for living expenses), there is no evidence that the false representation induced the son to sign the deed. Indeed, the son testified that no representations were made.

Under the cited law and the evidence in this record, the deed cannot be invalidated for fraud.

■ This Court cannot condone the actions of the defendant. Unquestionably, he deliberately failed to obey an order of court, for which he could have been punished for contempt. He induced his son to sign an instrument waiving the performance of the court order. Whatever the morals or ethics of his actions, no legal or equitable basis can be found for invalidating the act of the son who was a competent adult who could and should have comprehended the effect of his act.

The first issue is resolved adversely to the appellants.

The remaining issues are thereby rendered moot and are pretermitted.

The judgment of the Chancellor is affirmed. Costs of this appeal are taxed against the appellants. The cause is remanded to the Trial Court for such further proceedings, if any, as may be necessary and proper.

AFFIRMED AND REMANDED.

CANTRELL and KOCH, JJ., concur.