Ann Irene OWENS, Administratrix of the Estate of George C. Breeden, and next of kin of George C. Breeden, Plaintiff-Appellee,

v.

George A. BREEDEN and wife, Lillie B. Breeden, Defendants-Appellants.

Court of Appeals of Tennessee, Eastern Section.

Oct. 14, 1983.

Permission to Appeal Denied by Supreme Court Dec. 19, 1983.

Gerald C. Russell, Alcoa, for defendants-appellants.

David T. Black and Martha S.L. Black, Maryville, for plaintiff-appellee.

## OPINION

FRANKS, Judge.

In this action to set aside a deed to real property from deceased to the defendant, his youngest son, the trial judge voided the deed and ordered $5,000.00 from a certificate of deposit returned to the estate by defendant.

Defendant appeals, insisting that he exerted no undue influence on his father in the transactions.

The trial judge, sitting without a jury, made findings of fact which are in accord with the evidence and we adopt in pertinent part:

The proof in this case indicated that the defendant, Alfred Breeden, had been controlling the decedent's financial affairs since December of 1979. At that time the decedent had approximately Six Thousand Six Hundred Dollars ($6,600.00) in a passbook savings account at the Greenback Bank. At that time the defendant, by his own testimony, advised his ninety-three (93) year old father to put most of his money in a Certificate of Deposit. The defendant then took his father to the Greenback Bank and helped him transfer his funds to the Sweetwater Valley Bank, where Five Thousand Dollars ($5,000.00) was placed in a Certificate of Deposit made payable to the decedent or the defendant. The defendant's Georgia address was given to the Bank for purposes of communications about the

certificate, and the certificate itself was taken by the defendant to his lockbox in Georgia.

Prior to this transfer, the decedent had with some frequency made use of his funds that were on deposit at the Greenback Bank. The decedent was living on "limited Social Security income"; thus, when the defendant advised his father to place the Five Thousand Dollars ($5,000.00) in a Certificate of Deposit, which was controlled by the defendant, the defendant actually was in control of the defendant's finances, as the answer admits.

The decedent trusted the defendant and it was for that reason that the defendant was handling the financial affairs. The defendant then testified that by July of 1980, the decedent felt that he needed access to some more money and so expressed himself to the defendant. At that point, the defendant, having control over the decedent's money, by his own testimony himself suggested to the decedent that defendant could "buy" the decedent's farm for Ten Thousand Dollars ($10,000.00). By the defendant's own testimony, the decedent replied, "well, that's all the old place is worth," and the defendant stood mute, and then hurriedly closed the transaction without giving the decedent a chance to counsel with anyone else. Neither did the defendant discuss the transaction with the rest of the family.

The details of the "sale" transaction were that the defendant immediately took the decedent to Georgia—away from the rest of the family—for a week, where decedent was apparently told that the defendant was "giving him" Ten Thousand Dollars ($10,000.00), while in fact the defendant merely added the decedent's name on one of the defendant's matured Certificates of Deposit. The Certificate of Deposit from the Georgia Bank was beyond access to the decedent even if he had the certificate and in this case the decedent was not even given custody of the certificate which was simply returned to defendant's lockbox. Likewise, the interest payments were mailed to the defendant who then controlled them as well.

After the decedent had spent approximately a week in Georgia with the defendants, the defendant, Alfred Breeden, then brought his father back to Tennessee and immediately procured a deed transferring the property to himself and his wife. The defendant did not discuss the transaction with other members of the family, and he did not give his father the opportunity to do so either before the transaction was closed. Likewise, the defendant hired an attorney to draft the deed, but he made no effort to procure independent advice for his father as to the effect of the conveyance. Defendant did not call as a witness the attorney whom he hired to handle the transaction.

The defendants admit that the decedent never intended to give them the farm in question, but they in effect obtained everything the decedent had except the mere possibility of receiving Ten Thousand Dollars ($10,000.00) in the event he survived the defendants.

Thus, the Court is constrained to hold that a confidential relationship did exist between the parties; that the deceased did rely upon and trust his son to give him sound financial advice. That the deceased's son held his father's assets in trust and had almost complete control of them prior to and at the time of the conveyance. The deceased admittedly received no independent advice prior to and at the time of the conveyance.

■ Appellant, relying on *Kelly v. Allen*, 558 S.W.2d 845 (Tenn.1977), argues that no presumption of invalidity of a transaction between a parent and a child arises as there is no *per se* confidential relationship involving a "mentally competent parent and adult child." However, the presumption arises, as *Kelly* notes, where it is shown:

[T]hat there were present the elements of dominion and control by the stronger over the weaker, or there must be a showing of senility or physical and mental deterioration of the donor or that fraud or duress was involved, or other conditions which would tend to establish that the free agency of the donor was destroyed and the will of the donee was substituted therefor." 558 S.W.2d, at 848.

*Kelly* also states that influence must be exercised in a fair and reasonable manner without fraud or deception.

 Among the most common badges of fraud mentioned by Professor Gibson[1] are inadequacy of actual consideration, unusual mode of payment and the relationship of the parties. When these inculpatory facts are proved, the court will presume the existence of fraud, *i.e.,* where the consideration of an absolute conveyance is grossly inadequate. Prior to the defendants obtaining a deed to the farm, the farm had been listed with a real estate agent for $75,000.00. The undisputed evidence in the record is that the farm was valued in a range of $45,000.00 to $67,500.00. Clearly, under any reasonable view of the evidence the consideration to the deceased for the transaction was grossly inadequate.

 As to the certificate of deposit, there is neither evidence of fairness nor of independent advice to deceased. We agree with the trial judge that the money should be returned to the estate.

We affirm the judgment of the trial judge on all issues and remand at the cost of the appellants.

PARROTT, P.J., and SANDERS, J., concur.

1. *Gibson's Suits in Chancery,* §§ 1010–11 (4th ed., 1937).