David W. ROBERTS and wife Ruth Anne Roberts, and Jane Adele Roberts, and John F. Hueffner, Plaintiffs–Appellees,

v.

Bart IDDINS and Clayton Pangle, Defendants–Appellants.

Court of Appeals of Tennessee, Eastern Section.

May 3, 1990.

Permission to Appeal Denied by Supreme Court Oct. 1, 1990.

James H. Harris, Arnold, Winfrey, Simpson & Harris, Loudon, for defendants-appellants.

Richard K. Evans, Kingston, for plaintiffs-appellees.

## OPINION

FRANKS, Judge.

In this action, the chancellor entered judgment for plaintiffs against defendants on the basis they were acting as plaintiffs' agents for the purchase of stock. We affirm.

In 1985, Robert Foster owned all of the stock in two Loudon County restaurants: the corporations were the Pier House and the Mountainview Farm. Foster experienced financial problems and decided to increase his capital through outside investors. Foster asked Clayton Pangle, a member of the local Chamber of Commerce to assist in drafting a concept summary to entice new investors. The concept summary stated that all of the Mountainview stock would be transferred to the Pier House to form a single corporation and that 20 shares would be available to new investors, who would be limited to 5 per cent ownership at $10,000.00 each. Foster would retain 50 per cent of the corporate stock but corporate control would expand by inclusion of new board members. The concept summary included a statement that investors should not purchase shares unless they could bear to lose their entire investment.

David Roberts met Pangle and Pangle's close business associate Bart Iddins in 1985. Roberts had planned to move from Ohio to Tennessee and was investigating investment opportunities in the Loudon County area. Pangle visited with Roberts and his family in the spring of 1986 in Ohio and Roberts and his family invested $20,000.00 by writing checks to Roberts. David Roberts gave the checks from the family to Pangle to purchase stock. Roberts placed a restrictive endorsement on the back of the checks to indicate the money was "for deposit only to MFR, Inc."[1] Roberts testified that he had not met Foster at that time but later received promissory notes from Foster as a "receipt" of the payments for the shares. There is conflicting testimony about whether Roberts told Pangle and Iddins that the money should be applied solely to fund the new corporation or to pay for capital improvements on the restaurants before the new corporation was formed.

1. Identified in the concept summary as the corporation which operated Mountainview Farm.

Foster endorsed the checks over to M & B Construction, operated by Pangle and Iddins, to make repairs to the restaurants. Roberts relied on Pangle and Iddins, who worked very closely together, to purchase the stock for the Roberts' family in their absence. Roberts' demands to receive the stock were not met and ultimately Foster declared bankruptcy. A single corporation was never formed and no stock was ever issued.

At trial, the chancellor determined defendants did not engage in unethical or illegal conduct but found defendants expressly agreed to deliver plaintiffs' money in exchange for stock. They acted in concert and the promissory notes were never intended to substitute for stock and could not be so construed under the concept summary. He concluded defendants as agents breached their duty to plaintiffs and entered judgment for the $20,000.00 invested.

First on appeal, defendants argue it was error for the chancellor to allow plaintiffs to amend their pleadings to allege breach of contract. Tenn.R.Civ.P. 15.01 allows amendment of pleadings with the leave of the court which is to be freely given when justice requires. We conclude the amendment was not prejudicial to the defendants. While they allege they could have challenged the timing of Pangle's visits to Ohio and proved his representations were made after Roberts' family had already invested, the essence of plaintiffs' complaint is not that Pangle urged them to invest in the spring of 1986 but that plaintiffs gave their money in exchange for stock in the new corporate entity. Accordingly, it was within the chancellor's discretion to allow the amendment.

■ Next, it is argued the evidence preponderates against the chancellor's finding that defendants were agents of the Roberts family for the purposes of purchasing the stock. Agency does not require an explicit agreement. If the facts establish an agency relationship, it may be found to exist. *See Harben v. Hutton*, 739 S.W.2d 602 (Tenn.App.1987).

■ An agent is a fiduciary with respect to matters within the scope of the agency and the relationship implies the principal has reposed trust and confidence in the agent, who is bound to exercise the utmost good faith, loyalty and honesty toward the principal. *See Knox–Tenn Rental Co. v. Jenkins Ins.*, 755 S.W.2d 33 (Tenn.1988). In the sales context, the agency relationship may be determined by examining acts of the parties. *See* 739 S.W.2d at 606. Relevant factors include who first set the agency in motion, who can control the agent's actions and whose interests the agent can protect. *See id.* at 607.

■ Although these criteria establish that Pangle was Foster's agent in the initial stages of Foster's plan, Pangle and Iddins became the Roberts' family agents for the purposes of purchasing the stock in the corporation to be formed. Pangle and Iddins knew the Roberts' family was in Ohio and that Roberts and wife would not move for several months and, as the chancellor found, all of plaintiffs gave their money to defendants and directed how it should be used. Pangle and Iddins assumed this obligation because they wanted the Roberts' family support for future control of the board. Clearly, they were not acting on Foster's behalf in this context. While Foster and Pangle worked closely to develop the concept summary, there is no evidence that Foster entrusted the task of collecting investment money to these defendants, who were themselves investors. Nowhere is it suggested that Pangle or Iddins were Foster's agents for selling stock. The evidence does not preponderate against the chancellor's findings. T.R. A.P., Rule 13(d).

■ Finally, defendants assert, assuming they breached their fiduciary duties to Roberts and his family, plaintiffs suffered no damages because the corporation did not succeed and the stock would now be worthless in any event.

This ingenious argument is without merit. Although the chancellor expressly found no fraud, he did find that defendants were obligated to purchase the stock in the new corporation with plaintiffs' cash. Instead, defendants had Foster endorse the

checks over to their own construction business. The concept summary establishes the basis for plaintiffs' damages. It states that after the Mountainview stock was conveyed to Pier House, a single corporation would be formed and its stock would be issued to the investors. The corporation was not formed and, since Pangle and Iddins were entrusted with the money to purchase the stock in a corporation that was never formed, the chancellor properly required the return of the $20,000.00 defendants received.

The judgment of the trial court is affirmed at appellants' cost and the cause remanded.

SANDERS, P.J. (E.S.), and ANDERSON, J., concur.

