# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 7, 2008 Session

## JANICE TAYLOR, ET AL v. JACK EDWARD TAYLOR, ET AL.

**Appeal from the Chancery Court for Smith County**
**No. 7040      C. K. Smith, Chancellor**

---

**No. M2007-00565-COA-R3-CV - Filed April 24, 2008**

---

Two children of the late Bertie M. Taylor filed this action against two of their siblings, attorneys-in-fact for Ms. Taylor, to set aside a quitclaim deed conveying land of their mother executed through the use of a durable power of attorney.[1] Plaintiffs alleged that the power of attorney was invalid due to Bertie Taylor's lack of mental capacity; that the quitclaim deed was invalid because it contained the signature of only one of the attorneys-in-fact; and that the Defendants breached their confidential relationship with Ms. Taylor by engaging in self-dealing and/or undue influence. The trial court granted summary judgment in favor of Defendant Hoyt on the issues of Ms. Taylor's mental capacity and the required number of signatures on the quitclaim deed; and granted summary judgment in favor of Plaintiffs on the issues of Defendants' violation of their duties as attorneys-in-fact, violation of the confidential relationship and Defendant Jack Taylor's undue influence of Ms. Taylor. The Court declared the quitclaim deed void and vested each Plaintiff with a one-fifth interest in the property. We affirm the trial court's grant of summary judgment on the issues of Ms. Taylor's mental capacity, Defendants' violation of their duties as attorneys-in-fact and violation of the confidential relationship; we vacate the trial court's grant of summary judgment on the issue of Defendant Jack Taylor's undue influence; we reverse the trial court's grant of summary judgment on the issue of the required number of signatures on the deed; and we affirm the relief granted Plaintiffs by the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR. and ANDY D. BENNETT, JJ., joined.

Charles Galloway Blackard, III, Brentwood, Tennessee, for appellant Jack Edward Taylor.
Jacky O. Bellar and Jamie Douglas Winkler, Carthage, Tennessee, for appellant, Joyce Hoyt.

---

[1] The action was originally filed in the name of the Estate of Bertie M. Taylor by Janice Taylor, Administrator. Upon motion, Janice Taylor and Sandra Hudson, were allowed to be substituted for the Estate as Plaintiffs.

Angello L. Huong, Lebanon, Tennessee, for the appellees, Janice Eula Taylor and Sandra Hudson.

**OPINION**

Ms. Bertie Taylor, the mother of five children, executed a Durable Power of Attorney on July 31, 2001, naming two of her children, Jack Taylor and Janice Hoyt, as her attorneys-in-fact. The power of attorney granted Jack Taylor and Joyce Hoyt broad powers. Specifically with respect to real estate, the Defendants were granted power "to ... sell, convey... in any way or manner deal with all or any part of any real...property...that I now own...under such terms and conditions...as said attorney of fact [sic] shall deem proper." The power of attorney was recorded on July 10, 2003.

Ms. Hoyt executed a quitclaim deed in the name of Bertie Taylor on July 2, 2003, conveying 70 acres of land in Smith County to Defendant, Jack Taylor. The derivation clause in the deed identified the property as being the "same property transferred to Willie W. Taylor and Wife Bertie M. Taylor be [sic] Deed from William Carter and Thomas Carter d/b/a Carter Mobile Homes by Deed as evidenced in ... The said Willie E. Taylor is now deceased." The deed, which was not signed in any capacity by Jack Taylor, was likewise recorded on July 10, 2003.[2] The deed for the transfer listed the consideration or value at $25,000.[3] With regard to the consideration for the transfer, Ms. Hoyt asserted in response to Plaintiff's Rule 56.03 Statement of Material Facts that Jack Taylor "owned one-half of the property prior to the execution of the Quitclaim Deed" and that he "made payments since 1983 towards the property." Defendant Jack Taylor did not respond to an interrogatory of Plaintiffs asking him the consideration he gave for the property. He asserted variously that, since 1983-1984 he made one-half of the payments towards the property to his aunt, Loretta Taylor; that the property was paid off in 1996; that he paid $200 per month beginning August 2001 through June 2003; and that he was "the only one to purchase the property and work on the property."

Medical records reflect that Ms. Taylor had numerous conditions for which she received medical consultation and treatment, including Parkinson's disease, chest pain, hypertension, depression, abnormal heart rhythms, bronchitis, thoracic and abdominal aortic aneurysms, anxiety, chest pain, carotid artery disease, cerebral vascular disease, episodes of metabolic encephalopathy, pyelonephritis and adenyl insufficiency. She first exhibited signs of Alzheimer's disease in 1998 and began receiving treatment for it in December 2000; at that time the severity of the disease was "mild."[4] The medication she took allowed for some stabilization of the disease and, through the

---

[2] The notarial acknowledgment listed Bertie Taylor as bargainor and attested that Bertie Taylor executed the instrument.

[3] Neither of the Defendants asserted that the $25,000 reflected on the quitclaim deed as consideration for the transfer was actually paid for the property. This amount, the Court concludes, was actually a statement of value for the transfer.

[4] According to her physician, Dr. Littman, Alzheimer's disease progresses along a continuum from mild,

(continued...)

remainder of her life, she was able to perform most of her activities of daily living, respond to questions of her physician, including her medical history, and make simple decisions.

Ms. Taylor died intestate on July 23, 2003. Prior to her death, the Plaintiffs were not aware of either Ms. Taylor's execution of the power of attorney or the execution of the quitclaim deed. Plaintiffs filed suit seeking, *inter alia,* that the conveyance to Jack Taylor be set aside.

Standard of Review

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *See Draper v. Westerfield*, 181 S.W.3d 283, 288 (Tenn. 2005); *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003); *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 284 (Tenn. 2001); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000). We review the summary judgment decision as a question of law. *See Finister v. Humboldt Gen. Hosp., Inc.*, 970 S.W.2d 435, 437 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). Accordingly, this court must review the record *de novo* and make a fresh determination of whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Eadie v. Complete Co., Inc.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004); *Staples v. CBL & Assoc.*, 15 S.W.3d 83, 88 (Tenn. 2000).

The requirements for the grant of summary judgment are that the filings supporting the motion show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See* Tenn. R. Civ. P. 56.04; *Blair*, 130 S.W.3d at 764. Thus, summary judgment should be granted only when the undisputed facts, and the inferences reasonably drawn from the undisputed facts, support one conclusion - that the party seeking the summary judgment is entitled to a judgment as a matter of law. *See Webber v. State Farm Mut. Auto. Ins. Co.*, 49 S.W.3d 265 (Tenn. 2001); *Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Goodloe v. State,* 36 S.W.3d 62, 65 (Tenn. 2001).

We must consider the evidence in the light most favorable to the non-moving party, and we must resolve all inferences in the non-moving party's favor. *See Doe v. HCA Health Servs., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001); *Memphis Hous. Auth. v. Thompson*, 38 S.W.3d 504, 507 (Tenn. 2001). When reviewing the evidence, we must determine first whether factual disputes exist. If a factual dispute exists, we must then determine whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *See Summers v. Cherokee Family & Children Serv.*, 112 S.W.3d 486, 508 (Tenn. Ct. App. 2002). Where there exist factual disputes that must be resolved before a determination on the legal issues can be made or there is any doubt as to the conclusions to be drawn from the facts, summary judgment must be denied. *See Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). That is

[4](...continued)
involving a small decrease in daily living and ability to function; moderate, in which the person needs more assistance in the normal activities of daily living, including personal hygiene; and severe, in which the person is often confined to bed and receives assistance with eating and personal hygiene.

-3-

because summary judgment "is clearly not designed to serve as a substitute for the trial of genuine and material factual matters." *Id.* at 210.

## Analysis

A. Breach of Duties as Attorneys-in-Fact and Breach of Confidential Relationship

The holder of a power of attorney, characterized as the dominant party, serves in a fiduciary relationship to the grantor of the power to the extent the holder exercises the powers granted. *See* Tenn. Code Ann. § 34-6-107; *Matlock v. Simpson,* 902 S.W.2d 384 (Tenn. 1995). As agent of the grantor, the dominant party is bound to exercise the utmost good faith, loyalty and honesty toward the grantor. *See Roberts v. Iddins,* 797 S.W.2d 615 (Tenn. Ct. App. 1990), *perm. app. denied.* A person authorized to act on behalf of another by virtue of an unrestricted power of attorney also has a confidential relationship with the grantor of the power. *See Mitchell v. Smith,* 779 S.W.2d 384 (Tenn. Ct. App. 1989), *perm. app. denied.* While relations between family members are not confidential relationships *per se,* the fiduciary relationship created by the power of attorney gives rise to the confidential relationship. *See id.*

The Power of Attorney executed by Ms. Taylor appointed the Defendants as her attorneys-in-fact to act in her place "on my behalf, and for my use and benefit" and granted them the power to deal with any of her real property "under such terms and conditions as said attorney of fact [sic] shall deem proper." Thus, any transaction involving the property, or any asset of Ms. Taylor, was to be for her "use and benefit" and the Defendants assumed the fiduciary responsibility to so manage her assets. There is nothing in the record to demonstrate that Ms. Taylor received any benefit from the transfer of the property; to the contrary, the record shows that the property was the sole asset of Ms. Taylor.

The sole justification for the conveyance of the property to Defendant Jack Taylor is his assertion, variously made, that he contributed to the purchase price of the property and that he worked the property.[5] This justification does not detract from the duty imposed on Ms. Hoyt and Mr. Taylor, as attorneys-in-fact for Ms. Bertie Taylor, to act in her best interest, including the preservation of her assets. To the extent Mr. Taylor claimed a legal or equitable interest in the property, appropriate recourse was available to him. Pursuing his self-interest, as is inherent in his receipt of the property, violated his duty to act in the best interest of his mother.

To the same extent, Ms. Hoyt, in signing the deed, violated her duty to preserve the assets of her mother. This is so, notwithstanding the fact that Ms. Hoyt may have acted at the wishes of her mother, as asserted in Ms. Hoyt's interrogatory responses. There is no proof that Ms. Bertie Taylor received any benefit from the conveyance of her property and, as aforesaid, any interest

---

[5] The Court notes the conflict between Mr. Taylor's interrogatory answers, wherein he states that he had made ½ of the payments on the property since 1983-1984, with the property being paid off in 1996; he later states that he paid $200 per month from August 2001 through June 2003. He also asserts that payments were made to an aunt, Loretta Taylor, but there is nothing in the record to indicate what, if any, interest she had in the real estate.

claimed by Mr. Taylor in the property could have been declared and decreed by a court of equity.

B. Undue Influence

A presumption of undue influence is raised where the holder of the power receives a benefit from the grantor or where a confidential relationship is established and the dominant party receives a benefit from the other party. *See Matlock,* 902 S.W.2d at 386. The undue influence results in an "improper advantage ... taken 'either of the confidential relation existing ... or of the weakness and frailty of the party from whom the benefit was received' thus rendering the transaction invalid." *Richmond v. Christian,* 555 S.W.2d 105, 107 (Tenn. 1977) citing *Graves v. White,* 63 Tenn. 38 (1874). The presumption may be rebutted only by clear and convincing evidence of the fairness of the transaction. *See id.; see also, Matlock,* 902 S.W. 2d at 386.

The nature of proof of fairness necessary to overcome the presumption of undue influence is, of course, largely dependent on the particular facts of the case at issue. In *Richmond v. Christian*, the decedent lived with her son for several months prior to her death, during which time she was totally dependent upon him for the conduct of her business transactions and personal needs; twenty days before her death she executed a deed conveying her property to her son. The Tennessee Supreme Court noted the rebuttable presumption of improper advantage leading to the invalidity of the transaction arising from the receipt of a gift or other benefit by a dominant party. The Court held that a showing that a donor received independent advice respecting the consequences and advisability of the transaction prior to making a gift to a dominant party was reasonable and required, particularly where it would be difficult to show fairness without proof of such independent advice and where the donor was impoverished as a result of the transaction. The deed was invalidated.

The trial court correctly held that no presumption of undue influence arose relative to Joyce Hoyt, since she received no benefit from Ms. Bertie Taylor. While the conveyance to Jack Taylor might otherwise raise such a presumption of undue influence,[6] the deed conveying the property to him was signed by Joyce Hoyt, as attorney-in-fact for Ms. Bertie Taylor, a transaction we have found to be invalid due to Ms. Hoyt's breach of her duty as such attorney-in-fact. Consequently, the trial court's grant of summary judgment to Plaintiffs on the ground that Jack Taylor exercised undue influence is vacated as moot.

C. Required Signatures on the Quitclaim Deed

---

[6] The confidential relationship between Jack Taylor and Ms. Bertie Taylor is evidenced not only by the mother-son relationship but by her appointment of him as her attorney-in-fact; in addition, it is clear from the record that Ms. Taylor suffered increasing medical challenges over the last years of her life. There is no evidence to show any rationale for the conveyance of the property to Jack Taylor at the time of the conveyance; that Jack Taylor paid any consideration for the property; that he was a bona fide purchaser; or that Ms. Bertie Taylor knew of the execution of the deed or received any advice regarding same.

The authority conferred upon two or more agents is generally presumed to be joint, unless it is demonstrated that less than the entire number have the authority to act. *See* 24 C.J.S. Agency § 224 (2008). The execution of authority by less than the whole number of agents may be validated by ratification of the action by the other agent. *See id.* Ratification is "the express or implied adoption and confirmation by one person of an act or contract performed or entered into in his behalf by another who assumed to act as his agent without authority to do so." *Bells Banking Co. v. Jackson Ctr., Inc.,* 938 S.W.2d 421 (Tenn. Ct. App. 1996), *perm. app. den.* (1997).

The power of attorney used the conjunctive "and" rather than "or" when appointing the Defendants and there is no language in the instrument permitting them to act severally. There was no specification of power to either Defendant to ratify the act of the other Defendant; the only power of ratification referenced in the instrument was Ms. Bertie Taylor's prior ratification of acts taken pursuant to the powers granted.

The trial court held that Ms. Hoyt's signature alone was sufficient to transfer Ms. Taylor's interest in the property to Jack Taylor, stating that the signature of one attorney-in-fact was sufficient where there is proof of ratification of the act by the other. The proof of ratification cited by the trial court was Jack Taylor's presumed consent or acquiescence to the conveyance of the property to him and his interrogatory answer stating that he transferred the property to himself through the use of the power of attorney. Consent to the transaction, however, is only part of ratification; the person who performed the act being ratified - here, Ms. Hoyt - must be acting as the agent of the person who ratifies the act. At no point did Ms. Hoyt represent she was acting as agent for Mr. Taylor in executing the quitclaim deed; when she executed the deed, she did so on behalf of Ms. Taylor. For the reasons cited herein, Mr. Taylor did not have authority to convey the property to himself; consequently, he could not ratify Ms. Hoyt's act. Upon the facts presented, summary judgment in favor of Plaintiffs on this issue was appropriate and the judgment of the Chancery Court should be modified in this regard.

D. Relief Granted by the Trial Court

The effect of the findings of undue influence, breach of fiduciary duties as attorneys-in-fact and breach of confidential relationship is to render the quitclaim deed invalid. *See Richmond v. Christian, supra.* In this case, the declaration of invalidity and setting aside of the quitclaim deed restore the real estate as an asset of Ms. Bertie Taylor and, upon her death intestate, was inherited in equal shares by her children. Tenn. Code Ann. § 31-2-104(b)(1). The action of the trial court in this regard was correct.

Conclusion

For the reasons set forth above, we affirm the judgment of the Chancery Court as modified. Costs are assessed against Appellants equally.

                              _____
                              RICHARD H. DINKINS, JUDGE