# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
August 25, 2010 Session

## ESTATE OF DAVID HOLT RALSTON, DECEASED, BY JOHN A. RALSTON, PERSONAL REPRESENTATIVE v. FRED R. HOBBS ET AL.

**Appeal from the Chancery Court for Rutherford County**
**No. 07-1667CV      Allen W. Wallace, Judge**

---

**No. M2009-02442-COA-R3-CV - Filed October 28, 2010**

---

The personal representative of a decedent's estate filed this action to rescind twelve deeds, all of which were executed by the decedent's attorney-in-fact without the decedent's knowledge and for which the decedent received no consideration, or alternatively for damages. The attorney-in-fact conveyed the property to himself, his mother, and his daughter. The personal representative alleges that the attorney-in-fact breached his fiduciary duty in making the transfers. The trial court agreed, and rescinded the conveyances for property still owned by the attorney-in-fact and awarded monetary damages against the attorney-in-fact for the value of property subsequently conveyed to innocent third parties. The attorney-in-fact appeals claiming, *inter alia*, the personal representative lacks standing to bring a claim on behalf of the estate involving real property, that the action is barred by the statute of limitations, and that the trial court erred in finding that the durable power of attorney did not authorize him to transfer the property. We have determined the personal representative has standing to maintain this action and the action was timely filed. We affirm the trial court's finding that the attorney-in-fact breached his fiduciary duty by conveying the property to himself, his mother, and his daughter for no consideration to the decedent. We also affirm the rescission of the deeds to property the attorney-in-fact still owns and the award of damages against the attorney-in-fact for the value of the real property that has since been conveyed to innocent third parties.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

William Kennerly Burger, Murfreesboro, Tennessee, for the appellants, Fred R. Hobbs, Myrtle Ralston Hobbs, Amanda Hobbs Johnson, and Jonathan Johnson.

Mark S. Dessauer and Rachel E. Ralston, Kingsport, Tennessee, for the appellee, The Estate of David Holt Ralston, Deceased, by John L. Ralston, Personal Representative.

**OPINION**

The decedent, David Ralston, owned a substantial interest in valuable real estate throughout his adult life; that is, until he appointed his nephew, Fred Hobbs, as his attorney-in-fact on June 3, 2000. When the power of attorney was executed, David Ralston and his sister, Myrtle Ralston Hobbs, the mother of Fred Hobbs, owned the old family farm and adjoining property as tenants in common,[1] and David Ralston's share of the real property was worth approximately $1,000,000.

Shortly after being appointed as attorney-in-fact for David Ralston, Hobbs used the power of attorney to execute twelve deeds to convey all of David Ralston's interest in the real estate to himself, or his mother, Myrtle Hobbs, or another uncle, Thomas Ralston. Seven of the deeds were quitclaim deeds; the others were warranty deeds. All of the deeds were signed by Fred Hobbs as the attorney-in-fact for David Ralston; Mr. Ralston did not sign any of the deeds and there is no evidence in the record that he was ever aware of any of the deeds.

None of the twelve deeds were recorded until after David Ralston's death, which was fifteen months after the deeds were executed by Fred Hobbs. David Ralston died on September 12, 2001, and the deeds were not recorded until September 20, 2001.

In September of 2001, following David Ralston's death and the recording of the first twelve deeds, Hobbs executed a new set of deeds to convey the rest of the family farm, which included property that Fred Hobbs previously conveyed on behalf of David Ralston to Myrtle Hobbs and Thomas Ralston, using two additional powers of attorney his mother Myrtle Hobbs and his uncle Thomas Ralston had executed on June 3, 2000.[2] This time Fred Hobbs

---

[1]The decedent, David Ralston, was one of five children all of whom grew up on the family farm near Eagleville, Tennessee. He and his sister Myrtle Hobbs inherited most of the real estate from their parents and siblings. Following the death of their father in 1966, the decedent and one of his brothers, Andrew Ralston, operated the family farm as equal partners, and they employed their sister, Myrtle Hobbs, and a brother, Thomas Ralston, who also lived on the family farm, to help work the farm. A fifth sibling, John Ralston, left the family farm at an early age. Fred Hobbs, the son of Myrtle Hobbs, lived with his mother on the family farm from the time he was two years old until he married in 1971. For a detailed summary of the family history see *Ralston v. Hobbs*, 306 S.W.3d 213 (Tenn. Ct. App. 2009).

[2]The decedent's power of attorney was executed shortly before the death of Andrew Ralston, one of the decedent's siblings. Andrew Ralston was survived by three siblings: the decedent, Myrtle Ralston Hobbs, and Thomas Ralston. All three surviving siblings executed durable powers of attorney on the same
(continued...)

conveyed some of the property to himself and some of it to his daughter, Amanda Hobbs Johnson, for no consideration. He also sold property formerly owned by the decedent, David Ralston, to third parties who were bona fide purchasers for value; however, no consideration was ever paid by Fred Hobbs to David Ralston or his estate.

On October 3, 2005, John Ralston, a brother of the decedent, was appointed personal representative of David Ralston's estate. One month later, on November 8, 2005, the personal representative filed this action on behalf of the estate against Fred Hobbs,[3] Myrtle Hobbs, Amanda Hobbs Johnson, and Jonathan Johnson. The Johnsons are the daughter and son-in-law of Fred Hobbs. It is alleged in the complaint that Hobbs was in a confidential relationship with the decedent and that Hobbs breached his fiduciary duty as the decedent's attorney-in-fact when he transferred the decedent's property to himself and other family members for no consideration, as well as selling the decedent's property to third parties. An amended complaint was filed on October 30, 2007, in which the third party purchasers were additionally named as defendants. The amended complaint advanced essentially the same legal theories as the original complaint.[4]

Fred Hobbs, Myrtle Hobbs, and the Johnsons filed answers to the amended complaint asserting, *inter alia*, the affirmative defenses of the statute of limitations and estoppel. Some of the third party purchasers responded to the amended complaint by filing a motion for judgment on the pleadings asserting they were bona fide purchasers for value and were without notice that the original conveyances were without value. In July 2008, the trial court granted the motion for judgment on the pleadings thereby dismissing some of the third party purchasers. Thereafter, the estate voluntarily dismissed the remaining third party purchasers. The estate also dismissed its claim against Thomas Ralston, as no property remained titled in his name[5] and he had not participated in Hobbs' activities.

---

[2](...continued)
day at the law office of Wendell Rowland and all of them named Fred Hobbs as the attorney-in-fact. Fred Hobbs drove the three siblings to the attorney's office.

[3]This is not the first action in which Fred Hobbs has been successfully sued by or on behalf of an uncle to recover property for breach of fiduciary duty. *See Ralston v. Hobbs*, 306 S.W.3d 213.

[4]The amended complaint was filed because, on June 1, 2007, the trial court dismissed the original complaint, without prejudice, for failure to join the third party purchasers and lien holders of the real property, whom the trial court found to be indispensable parties.

[5]Thomas Ralston no longer held title to any of David Ralston's property because Fred Hobbs used the power of attorney Thomas Ralston had give him to divest Thomas Ralston of property Fred Hobbs had conveyed to Thomas Ralston by deed in June of 2000.

The estate's claims against the four remaining defendants, Fred Hobbs, Myrtle Ralston Hobbs, Amanda Hobbs Johnson, and Jonathan Johnson, went to trial on September 14 and 15, 2009. Following a bench trial, the trial court found that Fred Hobbs violated his fiduciary responsibilities as attorney-in-fact for the decedent, that Fred Hobbs' conveyances of the decedent's real property were not fair to the decedent, and that there was no evidence that the decedent had a history of gifting property to his relatives.

In the judgment entered on November 2, 2009, the trial court rescinded the deeds for the properties that were still titled to Fred Hobbs, Myrtle Ralston Hobbs, and/or Amanda Hobbs Johnson. As for the decedent's property that Fred Hobbs subsequently conveyed to the third party bona fide purchasers, the trial court awarded a monetary judgment against Fred Hobbs of $600,982.09, for the value of the property, plus prejudgment interest, for a total award of $962,550.54. Thereafter, the Estate filed a motion for discretionary costs in the amount of $2,316.00, which the trial court granted. An Amended Judgment was entered on February 22, 2010 to correct errors in the previous judgment regarding the deeds that were rescinded.

Fred Hobbs filed a timely appeal; the other three defendants, Myrtle Ralston Hobbs, Amanda Hobbs Johnson, and Jonathan Johnson, did not appeal.

**ANALYSIS**

Fred Hobbs raises numerous issues on appeal. First, he contends the personal representative lacks standing to maintain an action for conversion of real property. Second, if the personal representative has standing, he contends this action is barred by the statute of limitations. Third, he insists he did not breach his fiduciary duty to as his uncle. Last, and alternatively, he asserts the trial court erred in calculating the amount of damages.

I.
STANDING OF THE DECEDENT'S PERSONAL REPRESENTATIVE

Hobbs contends that the personal representative does not have standing because the decedent's real property vests in heirs immediately upon the decedent's death. We have determined the personal representative has standing to assert the claim for conversion of real property; because conversion is a tort.[6]

---

[6]Hobbs attempts to align this case with those in which the real property has already vested with the intestate heirs upon the death of the decedent. In such cases, the right to bring a suit, such as an action for ejectment, would fall to the intestate heir(s). *See* Jack W. Robinson, Sr., Jeff Mobley & Andrea J. Hedrick,

(continued...)

The complaint states a claim for fraudulent conversion of real property against Fred Hobbs.[7] A claim for fraudulent conversion is a tort claim. *H & M Enters., Inc. v. Murray*, No. M1999-02073-COA-R3-CV, 2002 WL 598556, at *3 (Tenn. Ct. App. Apr. 17, 2002) (citing *Kinnard v. Shoney's*, Inc., 100 F. Supp. 2d 781, 797 (M.D. Tenn. 2000); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)).

Historically, under the English common law, tort claims died with the decedent, however, an exception was carved into the common law with the enactment of the English statute, 4 Edward III, ch. 7, and, thereafter, the personal representative retained the right to bring such suits on behalf of the decedent.[8] *Ware v. McKeithan (In re Estate of Hendrickson)*,

---

[6](...continued)
*Pritchard on Wills and Administration of Estates* § 711 (6th ed. 2007). We also find Hobbs' broad sweeping contention that the personal representative has no right to bring an action that relates to real property of the decedent unless the estate is insolvent without merit. A personal representative has the right to file suit for injuries to the real property in actions which arose *prior to* the decedent's death. *See* Tenn. Code Ann. § 29-36-104. A personal representative may also bring suit for an action of breach of a covenant that did not run with the land as such an action is deemed personal and passes upon the decedent's death to his personal representative. 2 *Pritchard* § 714. Thus, a court must look to either the applicable statute or the gravamen of the civil action. This is an action for the intentional tort of conversion, which is a tort.

[7]Initially, plaintiff sought the recovery of personal property and real property. The trial court dismissed the claim regarding personal property finding that claim was barred by the statute of limitations. Plaintiff did not appeal that ruling.

[8]Historically, under the maxim of the common law *actio personalis moritur cum persona*: if an injury was done either to the person or property of another for which damages alone could be recovered, the action died with the person to whom the wrong was done. 2 *Pritchard* § 716. A personal representative could not sue for a tort committed against the decedent. *Id.* That changed with the enactment of the English statute 4 Edward III, ch. 7, which is a part of our common law, stating "executors shall have an action against trespassers for a trespass done to their testators, as of the goods and chattels of their testators carried away, and recover their damages in like manner as they whose executors they be should have had if they were in life." *Id.* As *Pritchard* explains:

> By an equitable construction of the statute, executors and administrators became entitled to the same actions for any injuries done to the personal estate of the decedent in his lifetime whereby it became less beneficial to the personal representative as the decedent himself might have had, whatever the form of the action.

> Consequently, if the goods of the testator or intestate that have been "carried away" remain in specie, the representative may have an action in any proper forum to recover them from the wrongdoer. If these have been disposed of, he may sue for money had and received, to recover their value, or may sue for their conversion. . . .

(continued...)

No. M2008-01332-COA-R9-CV, 2009 WL 499495 at * 7 (Tenn. Ct. App. Feb. 25, 2009) (citing Jack W. Robinson, Sr., Jeff Mobley & Andrea J. Hedrick, *Pritchard on Wills and Administration of Estates* § 716 (6th ed. 2007)). The law concerning tort actions, such as conversion prior to the death of the decedent, are exclusive to the personal representative, since this is an exception carved in the law, which used to preclude such actions from being pursued after the death of the person harmed. *Id.* (citing 2 *Pritchard* § 716). Therefore, civil actions to recover assets taken from the decedent by fraud or deceit are exclusive to the personal representative. *See id.* (citing *Willis v. Smith*, 683 S.W.2d 682 (Tenn. Ct. App. 1984); *Owens v. Breeden*, 661 S.W.2d 887 (Tenn. Ct. App. 1983)).

The personal representative of the decedent's estate has an affirmative fiduciary duty to marshal and collect the assets of the estate, to enforce choses in action which existed in favor of the decedent, and to distribute the estate to the beneficiaries in a timely manner. *Id.* at * 5 (citing *Estate of Doyle v. Hunt*, 60 S.W.3d 838, 844 (Tenn. Ct. App. 2001); *Campbell v. Miller*, 562 S.W.2d 827, 832 (Tenn. Ct. App. 1977)). "The law in Tennessee is clear that upon the appointment of a personal representative, the title to all of the decedent's general personal estate is vested in the representative." *Id.* at *7 (citing *First Nat'l Bank v. Howard*, 42 Tenn. App. 347, 302 S.W.2d 516, 518 (Tenn. Ct. App. 1957); *see Union Planters Nat'l Bank & Trust Co. v. Beeler*, 172 Tenn. 317, 112 S.W.2d 11 (Tenn. 1938)). In this action, the personal representative asserts a claim against Fred Hobbs for the intentional tort of conversion of the decedent's real estate. We have determined the personal representative has standing to bring an action for the intentional conversion of the decedent's real property. *See id.* (citing *Willis*, 683 S.W.2d 682; *Owens*, 661 S.W.2d 887).[9] Therefore, we hold that the personal representative has standing to bring the claim of intentional conversion of real property of the decedent against Fred Hobbs.[10]

---

[8](...continued)
2 *Pritchard* § 716 (footnotes omitted).

[9]We find this case distinguishable from situations in which the decedent was the person who made the conveyances. A personal representative "ordinarily cannot impeach for fraud any conveyances which the decedent made in his lifetime of either real or personal property, for if the conveyance was good as against the decedent it is equally good as against his personal representative." 2 *Pritchard* § 696.

[10]Based upon our ruling that the personal representative was the proper party to file this action, we find the Estate's Motion to Add and/or Realign Parties moot and therefore the motion is denied.

## II.
## STATUTE OF LIMITATIONS

Fred Hobbs next contends that the conversion claim is barred by the three year statute of limitations set forth in Tenn. Code Ann. § 28-3-105 for "[a]ctions for injuries to personal or real property," "[a]ctions for the detention or conversion of personal property," and "[c]ivil actions based upon the alleged violation of any federal or state statute creating monetary liability for personal services rendered, or liquidated damages or other recovery therefor, when no other time of limitation is fixed by the statute creating such liability." He argues that the claim falls under Tenn. Code Ann. § 28-3-105 because it is a right of action to recover property that was sold or transferred.

We find Hobbs' reliance on Tenn. Code Ann. § 28-3-105 misplaced. This is because Tenn. Code Ann. § 28-3-105 only addresses actions for "conversion of personal property." This is an action for conversion of real property. We find that the applicable statute of limitations for this action is stated in Tenn. Code Ann. § 28-3-110, which provides a ten year statute of limitations for "causes of action not otherwise provided for" in the Code. Hobbs first used his uncle's power of attorney to convey his uncle's real property in June of 2003. This action was filed on November 8, 2005, well within the ten year limitation. Accordingly, this action was timely filed pursuant to Tenn. Code Ann. § 28-3-110.

We also find that the cause of action did not accrue, and thus, the statute of limitations did not begin to run, until October 3, 2005, when the personal representative was appointed. Conversion is the "appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property." *Ralston*, 306 S.W.3d at 221 (citing *Hanna v. Sheflin*, 275 S.W.3d 423 (Tenn. Ct. App. 2008); *Brandt v. BIB Enters., Ltd.*, 986 S.W.2d 586, 595 (Tenn. Ct. App. 1998); *Mammoth Cave Prod. Credit Ass'n v. Oldham*, 569 S.W.2d 833, 836 (Tenn. Ct. App. 1977)); *Barger v. Webb*, 391 S.W.2d 664, 665 (Tenn. 1965)). Conversion does not occur until the "alleged wrongdoer exercises dominion over the funds in 'defiance of the owner's rights,'" *Id*. at 223 (quoting *Hanna*, 275 S.W.3d at 427), and the cause of action of conversion accrues when "the plaintiff knew or reasonably should have known that a cause of action existed." *Id.* (quoting *Hanna*, 275 S.W.3d at 427).

Hobbs executed the deeds using his status as attorney-in-fact in the summer of 2000, however, the deeds were not recorded until after the decedent's death in September of 2001. Thus, Hobbs did not "exercise dominion" over the real property in "defiance of the [decedent's] rights" until September 20, 2001. *Id*. at 223 (quoting *Hanna*, 275 S.W.3d at 427). The decedent was unaware of the execution of the deeds when he died, and since the deeds were not recorded until after the decedent's death, he could not have reasonably known

that the cause of action existed. Thus, the cause of action did not accrue prior to the decedent's death.

When a cause of action accrues after the death of the decedent, and prior to the appointment of the personal representative, the statute of limitations does not begin to run until the personal representative's appointment. 2 *Pritchard* § 729 (citing *Fowlkes v. Nashville & D.R.R.*, 56 Tenn. 829 (1872); *Thurman v. Shelton*, 18 Tenn. 383 (1837)). The personal representative was appointed on October 3, 2005. This action was filed on November 8, 2005 and thus it would also have been timely had the three year statute of limitations under Tenn. Code Ann. § 28-3-105 applied.

## III.
### BREACH OF FIDUCIARY DUTY AS ATTORNEY-IN-FACT

Hobbs also challenges the trial court's finding that he breached his fiduciary duty as the decedent's attorney-in-fact. He advances several theories to justify his actions in executing the deeds transferring his uncle's real property to himself and other family members. First, he contends that the durable power of attorney authorized the transfers. Second, Hobbs contends that the transactions were fair, thus rebutting the presumption of undue influence, based upon proof of the parties' relationship. Last, Hobbs contends that the conveyances were "expressly ratified by the conduct and words" of the decedent in the fifteen months from the transfers until his death. We find no merit to any of these contentions.

### A.

Hobbs contends he did not breach his fiduciary duty to the decedent because the power of attorney expressly authorized him to make the conveyances at issue. Hobbs points to Tenn. Code Ann. § 34-6-110, which governs gifts given under a power of attorney. The statute states:

(a) If any power of attorney or other writing:

(1) Authorizes an attorney-in-fact or other agent to do, execute or perform any act that the principal might or could do; or

(2) Evidences the principal's intent to give the attorney-in-fact or agent full power to handle the principal's affairs or to deal with the principal's property;

-8-

then the attorney-in-fact or agent shall have the power and authority to make gifts, in any amount, of any of the principal's property, to any individuals, or to organizations described in §§ 170(c) and 2522(a) of the Internal Revenue Code or corresponding future provisions of the federal tax law, or both, *in accordance with the principal's personal history of making or joining in the making of lifetime gifts*. This section shall not in any way limit the right or power of any principal, by express words in the power of attorney or other writing, to authorize, or limit the authority of, any attorney-in-fact or other agent to make gifts of the principal's property.

Tenn. Code Ann. § 34-6-110(a) (emphasis added). While Hobbs is correct that the statute gives an attorney-in fact the authorization to make gifts on behalf of the principal, the statute states the gifts must be "in accordance with the principal's personal history of making or joining in the making of lifetime gifts." Tenn. Code Ann. § 34-6-110(a).[11] The trial court made the specific factual finding that the decedent did not have a history of making gifts. We presume the trial court's factual findings are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). After a review of the record, we find that the evidence does not preponderate against the trial court's findings. There is nothing in the record to support Hobbs' contention that the decedent wished the property to be given as a gift.

Further, Tenn. Code Ann. § 34-6-110(a) does not obviate the attorney-in-fact's overriding fiduciary duties of loyalty, honesty, and to act with good faith for and on behalf of the principal. *Ralston*, 306 S.W.3d at 221. "The execution and exercise of a power of attorney establishes a fiduciary relationship between the attorney-in-fact and the grantor of the power." *Id.* (citing *Martin v. Moore*, 109 S.W.3d 305, 309 (Tenn. Ct. App. 2003)). Because of this fiduciary relationship, when acting as the decedent's attorney-in-fact, Hobbs was required to act on his uncle's behalf with the "utmost good faith, loyalty, and honesty." *Id.* (citing *Martin*, 109 S.W.3d at 309; *Roberts v. Iddins*, 797 S.W.2d 615, 617 (Tenn. Ct. App. 1990)).

B.

Hobbs contends the gratuitous conveyances of the decedent's real property were fair to the decedent; therefore, he did not breach a fiduciary duty by making the conveyances.

---

[11]We find no merit to Hobbs' contention that the conveyances were not "gifts" and that Hobbs and his mother were somehow entitled to the real property. The transfers of real property were made without consideration and therefore constitute gifts.

When an attorney-in-fact makes gifts of the principal's assets to himself, a presumption arises that the transaction is invalid unless the attorney-in-fact can demonstrate by clear and convincing evidence the fairness of the transaction to the principal. *Ralston*, 306 S.W.3d at 227 (citing *Martin*, 109 S.W.3d at 310; *Richmond v. Christian*, 555 S.W.2d 105, 108 (Tenn. 1977)). Hobbs contends that the fairness of the transaction is proven by the relationship between the parties. As we understand it, Hobbs' argument is that the decedent intended for the family, meaning Fred Hobbs and his mother, to have the decedent's land. Hobbs also contends the fairness of the transaction is established by the testimony of Wendell Rowland, the attorney who prepared the durable power of attorney for the decedent. Hobbs asserts Rowland's testimony demonstrates that the transactions were fair because Rowland advised the decedent "of the legal import of the power of attorney." We disagree.

The existence of independent legal advice can demonstrate that a transaction was fair. *Ralston*, 306 S.W.3d at 213 (citing *Richmond*, 555 S.W.2d at 108). Hobbs, however, has failed to establish that the decedent received independent advice regarding the conveyances at issue. It is undisputed the decedent had independent advice concerning the execution of the power of attorney; however, there is no challenge to the appointment of Hobbs as the attorney-in-fact. Thus, we find the circumstances surrounding the execution of the power of attorney irrelevant. What is significant is that the decedent was never advised by Mr. Rowland as to the subject of the gifts at issue, the conveyance of the decedent's real property.

> Proper independent advice . . . means that the donor had the [preliminary] benefit of conferring fully and privately *upon the subject of his intended gift* with a person who was not only competent to inform him correctly as to its legal effect, but who was furthermore so disassociated from the interests of the donee as to be in a position to advise with the donor impartially and confidently as to the consequences to himself of his proposed benefactions.

*Turner v. Leathers*, 232 S.W.2d 269, 271 (Tenn. 1950).

In addition to finding that Rowland never advised the decedent regarding the conveyances at issue, the trial court appropriately questioned whether Rowland could provide independent advice to the decedent when Fred Hobbs was the beneficiary of the gift. This is because Mr. Rowland had a long standing professional relationship with Fred Hobbs; Rowland represented Hobbs in his divorce, in a workers' compensation case, in a personal injury action, and in the purchase of Fred Hobbs' home.

Hobbs, however, asserts that Mr. Rowland had a "relationship with the entire Ralston family," and he did; however, the record reveals that Rowland's brief relationship with the Ralston family was a by-product of his preexisting relationship with Fred Hobbs. It is true

that Mr. Rowland prepared powers of attorney for Thomas Ralston, Myrtle Hobbs, and the decedent, but that is the extent of Mr. Rowland's relationship with the rest of the Ralston family. Moreover, he prepared the powers of attorney for the Ralston siblings at the request of Fred Hobbs. What is more significant is that Rowland had a long standing professional relationship with Fred Hobbs and Rowland never gave the decedent independent legal advice concerning the conveyances at issue.

The issue is whether the transaction was fair to the principal, the decedent, at the time of the conveyance. *See Thompson v. Thompson*, No. W2008-00489-COA-R3-CV, 2009 WL 637289, at *12 (Tenn. Ct. App. March 12, 2009) (citing *Smith v. Smith*, No. E2003-02877-COA-R3-CV, 2004 WL 2378245, at *3 (Tenn. Ct. App. Oct. 25, 2004)). The trial court found that Hobbs failed to demonstrate the conveyances for no consideration were fair to the decedent. The determination of whether a transaction is fair is a question of fact and we defer to a trial court's determination of facts unless the evidence preponderates against that determination. Tenn. R. App. P. 13(d); *Rawlings*, 78 S.W.3d at 296. We find the evidence certainly does not preponderate against the trial court's finding. Accordingly, we affirm the trial court's finding that Hobbs failed to overcome the presumption of invalidity.

C.

Hobbs also contends that the decedent expressly ratified the transactions by his conduct; he did not.

Hobbs relies upon agency principles for the contention that "self-benefitting actions taken by an agent may be ratified, approved and adopted by the subsequent conduct and words of the principal." Hobbs cites to *Webber v. State Farm Mutual Auto Insurance*, 49 S.W.3d 265, 270-71 (Tenn. 2001), for his argument that: "Where a principal has full knowledge at the time of the ratification, of all material facts and circumstances relative to the unauthorized act or transaction, any deficiencies in the agency are inconsequential, and the act of the agent becomes the act of the principal." In support of this contention, Hobbs makes one single statement: "David Ralston, fully alert, signed the auction contract, and participated in the liquidation with no objection." Hobbs makes no citation to the record where this can be found.[12] The only auction we can find in the record is an auction

---

[12] Tenn. R. App. P. 27(a)(7) requires an appellant to make citations to the record in support of its argument. Our courts have consistently held that "the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue." *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000) (citing *State v. Schaller*, 975 S.W.2d 313, 318 (Tenn. Crim. App. 1997); *Rampy v. ICI Acrylics, Inc.,* 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994); *State v. Dickerson*, 885 S.W.2d 90, 93 (Tenn. Crim. App. 1993)). It is not the duty of this court to
(continued...)

liquidating the personal property held by the decedent and his deceased brother, Andrew Ralston, which were assets of the family farm and significantly are not at issue in this appeal. Hobbs provides no other citations to the record in support of this contention. We find the record devoid of any evidence that the decedent was ever aware of the deeds executed by Hobbs. Therefore, we find no merit to Hobbs' contention that the decedent expressly ratified the conveyances of his real property.

We therefore affirm the trial court's determination that Fred Hobbs breached his fiduciary duty.

## DAMAGES

Hobbs contends the award of damages in the amount of $962,550.54, which includes interest, is not supported by "competent evidence anywhere in the record." However, Hobbs does not suggest a more accurate valuation of the property, nor does it appear that he provided any evidence in the trial court on the correct value of the property. Instead, he simply requests this court remand the action to the trial court for a new hearing on damages.

The trial court computed the damages for the property that was transferred to bonafide third-party purchasers by first identifying the decedent's interest in the real property. This was necessary because others owned a share of the property when it was wrongfully conveyed by Hobbs. To make this calculation, the trial court multiplied the fair market value of the property by the percentage the decedent owned in the property. Based upon this formula, the trial court found the value of the decedent's interest in the property at the time of the conveyances was $600,982.09. Once the value of the decedent's interest in the property was calculated, the court then applied the statutory rate of interest from the date of the sale forward. The total award of damages, including prejudgment interest was $962,550.54. After entertaining a motion for discretionary costs, the trial court awarded an addition $2,316.00 as discretionary costs.

Ironically, the personal representative relies in part on the testimony of Fred Hobbs to support the correctness of the award of damages. Hobbs testified that the fair market value of the property was equal to the amount listed in his affidavit and the personal representative contends that Hobbs was qualified to value the property as he testified at trial that he was in the real estate and auction business for forty years and was a licensed real estate agent and auctioneer at the time the transactions occurred.

---

[12](...continued)
verify unsupported allegations or search the record for facts in support of an appellant's poorly argued issues. *See id*. (citing *Duchow v. Whalen*, 872 S.W.2d 692, 693 (Tenn. Ct. App. 1993)).

Considering all of the above, we find that the evidence does not preponderate against the trial court's award of damages. Accordingly, we affirm the award of damages.

## IN CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded with costs of appeal assessed against the Appellant, Fred Hobbs.

_____
FRANK G. CLEMENT, JR., JUDGE